(No. 34464.—

THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, Appellee, *vs.* ELMER J. HOFFMAN, State Treasurer, *et al.,* Appellants.

*Opinion filed May 21, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, and THEODORE G. MAHERAS, of counsel,) for appellants.

WINSTON, STRAWN, SMITH & PATTERSON, of Chicago, and GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (GRIER D. PATTERSON, and DAVID C. KEEGAN, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

On July 24, 1956, the New York, Chicago and St. Louis Railroad Company, a domestic corporation, reported to the Secretary of State certain changes in its capital stock structure, together with an increase in stated capital occurring as a result of the change. An additional license fee in the amount of $11,271.65 was charged by the Secretary of State and paid under protest. Within the time prescribed by law the railroad company brought suit in the circuit court of Sangamon County against the State Treasurer and the Secretary of State to restrain a transfer into the general revenue fund and to obtain a refund of the amount. A decree was thereafter entered as prayed in the complaint, and defendants appeal. Since the revenue is involved the appeal is taken directly to this court.

The facts are not in dispute. The appellee corporation was organized in 1923 with an authorized capital stock in the amount of $105,500,000, consisting of 458,800 shares of $100 par value preferred stock and 596,200 shares of $100 par value common stock. At that time, under section 96 of the General Corporation Act of 1919, the license fee was based upon authorized capital and not upon stock actually issued. Appellee accordingly paid the sum of $52,750, computed at the prescribed rate of one-twentieth of one percent upon its authorized capital of $105,500,000.

By amendment of appellee's articles in 1951 the originally authorized 596,200 shares of $100 par value common stock were changed into 2,981,000 shares of $20 par value common stock. There was no change in preferred stock; and since capitalization was not increased, it is undisputed that no additional fee was payable by virtue of this change. (*Interstate Iron and Steel Co.* v. *Stratton,* 340 Ill. 422.) On May 25, 1956, appellee filed a further amendment to its charter reducing its authorized 458,800 shares of $100 par value preferred stock to 160,700 such shares, and increasing its authorized common stock from 2,981,000 shares of $20 par value to 5,962,000 shares of $15 par value. The total authorized capital stock thus remained without change, at $105,500,000.

Immediately prior to the amendment of May 25, 1956, the issued and outstanding stock consisted solely of 2,675,493 shares of $20 par value common stock, amounting in the aggregate to $53,509,860. The outstanding preferred stock, consisting of 360,979 shares in the total amount of $36,097,900, had been redeemed and cancelled, resulting in a reduction of stated capital in that amount. The amount of stated capital and paid-in surplus last reported prior to July 24, 1956, were $53,509,860 and $1,898,500 respectively, or a total of $55,408,360. As a result of the changes made by the amendment of May 25, 1956, the stated capital and paid-in surplus amounted to $80,264,790 and $1,898,500

respectively, or a total of $82,163,290. The amount added to stated capital was thus $26,754,930.

Under the present statute, enacted in 1933, an initial license fee is imposed at the time of filing the first report of issuance of shares, and an additional license fee is required whenever additional shares are issued, or an increase is reported in stated capital without the issuance of shares. (Ill. Rev. Stat. 1955, chap. 32, par. 157.128.) The initial fee is one-twentieth of one percent of the consideration received by the corporation for the shares actually issued. The additional license fee is computed at one-twentieth of one percent on "the amount, expressed in dollars, of the increase in the sum of its stated capital and paid-in surplus over the sum thereof last reported in any document, other than an annual report, required by this Act to be filed in the office of the Secretary of State." (Ill. Rev. Stat. 1955, chap. 32, pars. 157.129 and 157.130.) It is not disputed that in the absence of rights established under the prior statute, under which a fee was paid on the entire amount of capital stock which the company was *authorized* to issue, additional fees would be required on the presently reported increase in stated capital. Such rights, however, are expressly preserved by section 163, which provides in part that "The repeal of a law by this Act shall not affect any right accrued or established, or any liability or penalty incurred, under the provisions of such law, prior to the repeal thereof, * * *." Ill. Rev. Stat. 1955, chap. 32, par. 157.163.

The appellants contend that by cancelling its preferred shares and thus reducing its stated capital by $36,097,900, appellee relinquished proportionately its right to claim credit for original license fees upon a subsequent increase in stated capital. We think this position is substantially correct. Having paid fees under the prior statute on a total of $105,500,000, representing stock it was authorized to issue, appellee could subsequently issue its stock up to that au-

thorized limit without payment of any further fees. (See *Butler Brothers* v. *Martin,* 369 Ill. 151, 154.) However, when it issued the $36,097,900 worth of preferred stock it utilized this right *pro tanto,* leaving a balance of $69,402,100 in its authorized limit. When the new statute became effective, establishing a different basis for license fees, appellee was bound to comply with its provisions with respect thereto, except insofar as it had established a credit for fees paid with respect to authorized but unissued stock. The retirement and cancellation of the preferred stock occurred in 1955, and its significance insofar as license fees are concerned must be governed by the present statute. It is clear that the reduction in stated capital effected thereby cannot subsequently be utilized, in computing the basis for additional license fees, to offset a reported increase of stated capital. (See *Jewel Tea Co.* v. *Rowe,* 414 Ill. 495.) As a result of the reclassification and increase in capital stock reported on July 24, 1956, the appellee's stated capital and paid-in surplus totaled $82,163,290. This sum is $12,761,190 greater than the $69,402,100 of its stock then remaining upon which it had paid initial license fees on an authorized capital stock basis. It is accordingly liable for additional license fees on $12,761,190, the reported increase in the sum of its stated capital and paid-in surplus.

Appellee's argument that the paid-in surplus should have been excluded in computing the license fee is contrary to the plain language of the statute, and must be rejected. Section 129 prescribes as the basis for an additional license fee, the amount of increase in the sum of the stated capital and paid-in surplus. The right preserved by section 163 is not a right to be exempt from any change in the basis for computing license fees.

Appellants contend further that the appellee could issue stock without further payment of fee only in accordance with the allocation of capital stock made in 1923, namely $45,880,000 in preferred stock and $56,620,000 in common;

and that it cannot utilize, as a credit on the fee for newly issued common shares, that portion of the original fee attributable to authorized but unissued preferred stock. It is urged accordingly that the unissued $9,782,100 of preferred shares, upon which initial fees had been paid in 1923, should be excluded in computing the basis for credit. The position cannot be sustained. There is nothing in the language of the statute that purports to distinguish between classes of stock for purposes of license fees. The basis for an additional fee is measured by the increase in stated capital and paid-in surplus, without regard to the character of stock by which it is represented; and the original fee paid by the appellee was measured simply by the amount of authorized capital. The fact that two classes of stock had been authorized is of no significance for present purposes.

Appellee also contends that if the Business Corporation Act is construed to require an additional license fee on the issuance of its $105,500,000 of capital stock the sections in question would be unconstitutional. As appellee points out in its brief, however, the present case is concerned only with an interpretation of the rights established under the 1919 act and not with the question of whether those rights were destroyed. Since we have recognized the right to issue without further fee the amount of stock upon which initial fees had been paid, there is no constitutional question present.

The decree of the circuit court is reversed, and the cause is remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*