(No. 24617.—

BUTLER BROTHERS, Appellant, *vs.* JOHN C. MARTIN, State Treasurer, *et al.* Appellees.

*Opinion filed June 20, 1938.*

SCOTT, MACLEISH & FALK, and BROWN, HAY & STEPHENS, (LELAND K. NEEVES, and ROBERT A. STEPHENS, JR., of counsel,) for appellant.

OTTO KERNER, Attorney General, (P. C. OTWELL, and J. A. LONDRIGAN, of counsel,) for appellees.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

The appellant corporation, Butler Brothers, filed its complaint in equity in the circuit court of Sangamon county, seeking to restrain payment into the State treasury of license fees paid by it, under protest, to the Secretary of State, in connection with the issuance of 285,000 cumulative preferred shares of stock of the value of $30 each, which shares were issued in November of 1936, pursuant to charter amendments filed on November 2, 1936. The complaint was dismissed for want of equity in the circuit court

and, State revenues being involved, the appeal has been perfected directly to this court.

Prior to 1920, the appellant's capital stock consisted of twenty million dollars and, on January 22 of that year, it filed charter amendments increasing its authorized capital to thirty million dollars, having paid all fees due to the Secretary of State for such authorized increase. At that time section 96 of the Corporation act of 1919 required payment of fees based upon authorized capital and not upon stock actually issued. In 1932, the appellant further amended its charter by reducing its authorized capital from thirty million dollars to fifteen million dollars, which was accomplished by reducing the par value of the shares. After this reduction the appellant had actually outstanding 1,138,110 shares of the par value of $10 each, or a total outstanding capital of $11,381,100.

After these charter amendments decreasing the appellant's authorized capital the Corporation act was amended in 1933, and again in 1934. (Smith-Hurd Stat. 1933, chap. 32, par. 157.1, *et seq.*) The net result of these amendments was to provide that initial license fees were to be based upon issued capital stock rather than authorized capital. After these amendments, and on November 2, 1936, the appellant amended its charter by increasing its authorized capital stock from fifteen million dollars to thirty million five hundred thousand dollars and paid the filing fee for filing the certificate of amendment. On November 20, 1936, appellant issued 285,000 shares of its convertible preferred stock for a consideration of $8,835,000 which was duly reported to the Secretary of State, who insisted upon an additional license fee of $4,412.12, being the amount required by the Corporation act, as last amended. This amount was paid under protest, followed by the filing of the present suit. It is the contention of appellant that, having once paid a license fee which entitled it to an authorized capital of $30,000,000, it is not liable to pay any further

license fee within that limit. Appellant insists that having paid the fee required by the statute for the right to have a capital of thirty million dollars, it could not be deprived of that right.

Appellant cites *Commonwealth* v. *Independence Trust Co.* 233 Pa. 92, 81 Atl. 928, and *Talbott* v. *Louisville Trust Co.* 259 Ky. 75, 82 S. W. (2d) 219. In the Pennsylvania case the company paid an initial fee upon an authorized capital of one million dollars which was later "either decreased or withdrawn," so that only $75,000 capital remained. The capital was thereafter increased to two million dollars and the court held that the fee should only be paid on the additional one million dollar excess over the original capital. The opinion states that the record does not disclose what steps, if any, had been taken to reduce the original capital. The case is distinguishable for this reason and, also, for the further reason that there had, in the meantime, been no change in the corporation law. The court said that to charge a fee upon more than one million dollars would be to entirely ignore "the equities of the case." We fail to see that there is any question of equity involved in the matter and do not consider the case either persuasive or in point. Neither is the Kentucky case relied upon of any value to us as a precedent, because of a wide difference in the language of the Kentucky statute. In that case the trust company paid an organization tax on its original authorized capital of $1,750,000 which it afterward reduced to $200,000, but later increased to one million and then to two million dollars. The Kentucky statute required corporations to pay a tax upon any or all of their capital stock, and, upon the filing of an amendment, to pay the tax upon so much of the capital as "had not theretofore borne the tax." These words clearly distinguish the case from the one we are considering and again in this case, as in the Pennsylvania case, there had been no intervening statutory amendments.

It is too clear for argument that the appellant was not deprived of any right it may have had to issue stock up to thirty million dollars, by reason of any statutory amendment. That right, the loss of which is now deplored, was voluntarily waived by the appellant when it reduced its authorized capital stock from thirty million dollars to fifteen million dollars. It saw fit, for its own purposes, and probably to reduce its annual franchise tax, to make this voluntary reduction. It can now no more logically claim to have regained that right than it could have asked for a refund when the right was surrendered. Before the amendment to its articles of incorporation appellant might have issued its stock up to the authorized limit without payment of any further fees. That, however, was a privilege which it could exercise or waive at its pleasure.

The decree of the circuit court of Sangamon county will be affirmed.

*Decree affirmed.*