NORTHERN STATES POWER COMPANY v. JOSEPH L. DONOVAN AND ANOTHER.

103 N. W. (2d) 126.

May 13, 1960—No. 37,863.

---

*Miles Lord,* Attorney General, and *John F. Casey, Jr.,* Special Assistant Attorney General, for appellants.

*Linus J. Hammond, Donald E. Nelson, Leon B. Luscher, Roland W. Comstock, Arland D. Brusven,* and *Cummins, Cummins, Hammond, Cummins & O'Brien,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from a judgment granting relator's petition for a peremptory writ of mandamus commanding the secretary of state to receive and file an amendment to relator's articles of incorporation increasing its authorized capital stock without payment of any further charges under M. S. A. 300.49.

The material facts are not in dispute. Relator, Northern States Power Company, referred to hereinafter as NSP, is a Minnesota public utility corporation. Respondent Joseph L. Donovan is the secretary of state, and respondent Val Bjornson is the state treasurer of the State of Minnesota.

As of 1948, NSP had a total authorized capital of $225,000,000, on which it had paid the fee or tax required by § 300.49, subd. 1.[1] In 1951, it reduced its authorized capital to $175,000,000. No tax was required or paid under § 300.49 on such reduction. In 1958, NSP again amended its articles of incorporation so as to increase its authorized capital to $212,500,000.

On or about May 8, 1958, NSP transmitted to the state for filing the amendment of its articles of incorporation, together with the proper filing fee required by § 301.071[2] but not including any fee or tax to

---

[1]Section 300.49, subd. 2, provides the method for determining value of capital stock. It is not involved herein.

[2]The filing fee is to be distinguished from the charge required under § 300.49.

be paid under § 300.49. The state refused to file the articles of amendment unless NSP paid to the state the sum of $37,500, based on the difference between a capitalization of $175,000,000 and $212,500,000, contending that such payment was required under § 300.49. This suit was thereafter commenced seeking a writ of mandamus to compel the state to accept and file such amendment without any payment under § 300.49.

Section 300.49, subd. 1, reads as follows:

"Domestic corporations shall pay to the state treasurer the following fees:

"(1) For filing articles of incorporation or instruments extending or renewing corporate existence, $50 for the first $25,000 or fraction thereof of the par value of its authorized shares, and $1 for each additional $1,000 or fraction thereof;

"(2) For filing any amendment of articles of incorporation increasing the authorized number of shares, or the par value of shares previously authorized, or both, $1 for each $1,000 or fraction thereof of such increase."

The question here may be stated as follows: When a corporation has paid the tax required under § 300.49 on its authorized capital and thereafter reduces its capital and subsequently increases it, is the tax required by such increase to be computed on the excess over the highest prior authorized capital on which the tax has theretofore been paid or upon the increase over the authorized capital immediately preceding such increase?

The trial court held that the tax is to be computed on the excess over the highest prior authorized capital and that no tax was due since the authorized capital at one time was $225,000,000 and would now be only $212,500,000 and hence there was no increase over the highest prior authorized capital.

The trial court correctly held that the charge required to be paid under § 300.49 is a tax. It is graduated in amount, depending upon the authorized capital or increase thereof. The amount bears no relation to reasonable compensation for services or expenses involved

in recording. A filing fee is required under § 301.071, which has been paid and is not involved in this appeal. The filing fee is paid to the secretary of state, who does the recording, while the charge required under § 300.49 is paid to the state treasurer.

Respondents contend that § 300.49 is unambiguous and therefore not open to construction. We cannot agree. It is open to at least two interpretations, and, as such, our consideration requires the ascertainment of legislative intent in determining the meaning to be ascribed to the statute. The question is an open one in this state. It has been considered in a number of other jurisdictions. The general rule is stated in 11 Fletcher, Cyclopedia Corporations (Perm. ed.) § 5132, as follows:

"If the fee is paid on the amount of capital stock for which the company was originally incorporated, and thereafter the amount of stock is decreased, but subsequently is increased in excess of the original amount, the fee on the increase is to be based on the excess over and above the original amount of capital stock, rather than on the excess over the decreased amount."

Under statutes of similar import, but with some slight variations, this rule is followed in Commonwealth v. Independence Trust Co. 233 Pa. 92, 81 A. 928; Talbott v. Louisville Trust Co. 259 Ky. 75, 82 S. W. (2d) 219; Consumers Power Co. v. Corporation & Securities Comm. 326 Mich. 643, 40 N. W. (2d) 756; Oklahoma Gas & Elec. Co. v. Cartwright, 204 Okl. 261, 228 P. (2d) 1013.

Respondents rely for the most part upon Butler Bros. v. Martin, 369 Ill. 151, 15 N. E. (2d) 843. The facts in that case are distinguishable from those in the case now before us. The corporation involved had a total authorized capital of $30,000,000, on which all taxes had been paid to the secretary of state. The Illinois statute then required, as does the Minnesota statute, that the tax be based upon total authorized capital. In 1932 the total authorized capital was reduced to $15,000,000 by amendment of the corporate articles. In 1933, the statute was amended to change the basis on which the tax was computed from total authorized capital to capital stock actually issued. In 1936, the corporation increased the total authorized capital

stock to $30,500,000. The tax being then based on the stock actually issued, no additional taxes were required. Thereafter the corporation issued new stock in addition to that previously issued and was required to pay a tax on the additional amount so issued. It is apparent that the court's decision is based, at least in part, on the fact that the basis for computing the tax had been changed. In its opinion, in discussing Commonwealth v. Independence Trust Co. *supra,* and Talbott v. Louisville Trust Co. *supra,* the Illinois court said (369 Ill. 153, 15 N. E. [2d] 844):

"* * * The case [Commonwealth v. Independence Trust Co. *supra*] is distinguishable for * * * the * * * reason that there had, in the meantime, been no change in the corporation law."

The court then discussed the Talbott case and the difference in the statutes of Kentucky and Illinois and thereafter said (369 Ill. 153, 15 N. E. [2d] 844):

"* * * These words clearly distinguish the case from the one we are considering and again in this case, as in the Pennsylvania case, there had been no intervening statutory amendments."

In discussing Butler Bros. v. Martin, *supra,* the Oklahoma court, in Oklahoma Gas & Elec. Co. v. Cartwright, *supra,* said (204 Okl. 263, 228 P. [2d] 1015):

"* * * We do not consider that this Illinois case is in point here; and if it should be so considered, we do not desire to follow it, as we think the proper rule in a case of this kind is that the plaintiff has the right to change its authorized capital stock without additional charge, so long as it does not exceed the amount on which it has paid the license fee, and should it desire in the future to increase the capital stock above that amount, it would then be required to pay an additional fee on such increase."

Respondents also contend that, inasmuch as every secretary of state has construed the statute to mean what respondents now contend it should be held to mean, a practical construction has been placed upon the statute which should be followed.

The court, in its findings, found that every secretary of state since 1889 had required a fee to be paid on any increase in the total valuation of authorized capital stock over the amount authorized by the existing articles on file in his office and that if there had been a decrease in the total valuation of authorized stock, followed by a subsequent increase, every secretary of state since that time had required the corporation to pay fees for the entire amount of the immediate increase, with no credit for fees paid on higher authorized capital stock prior to the present valuation. In analyzing the evidence introduced to establish that fact, the court examined 56 instances that had occurred since 1889 and stated the difference between the charges imposed by § 300.49 as computed under the interpretation claimed by respondents and those imposed by that section as interpreted by the court. In 22 instances there would have been a difference of $10 or less; in 19 instances it would have involved a difference of $50 or less; in 14 instances there would have been a difference of $310 or less; and one instance would have involved a difference of $5,000.

While practical construction of long standing of a statute by public officials is entitled to consideration, and under some circumstances considerable weight, it is by no means binding on the court.

In State v. Church of Incarnation, 158 Minn. 48, 52, 196 N. W. 802, 804, we said:

"The taxing officials, under advice from the attorney general's office, took the position that the former rule still remained in force notwithstanding the amendment, and continued to tax parsonages. *This is the first time that that ruling has been questioned in a case which has reached this court.* The learned trial court felt constrained to follow the practical construction given the amendment as evidenced by the action of the taxing officials and the acquiescence of the public, but in a lucid and cogent memorandum pointed out that in his opinion that construction was not correct, and suggested that the language in State v. Carleton College [154 Minn. 280, 191 N. W. 400], supra, warranted submitting the question to this court. The construction given a law by the officials charged with the duty of applying it, if

acquiesced in for many years by the public, is entitled to much weight; but where, as here, no vested or property rights are involved, and the question is whether an illegal tax shall be enforced, we think that the fact that the tax has been exacted and paid during a number of years, should not be deemed conclusive, nor preclude those against whose property the tax is levied from objecting to a continuance of the exaction in the future." (Italics supplied.)

In Board of Education v. Borgen, 192 Minn. 367, 373, 256 N. W. 894, 897, we said:

"* * * This action is one brought by the petitioner to obtain a judicial construction of the applicable statutes. Unless mere time is to be a bar, the duty of the court is plain, namely, to construe the statute and determine its force and effect. No vested or property rights are involved. The question is whether a legal tax shall be enforced. *The mere fact that illegal taxes have been levied and collected in the past should not be conclusive against a construction obviously fitting.* As was said in the case of State v. Church of Incarnation, 158 Minn. 48, 53, 196 N. W. 802, such construction should not be permitted as to 'preclude those against whose property the tax is levied from objecting to a continuance of the exaction in the future.'

"The rule of practical construction is not entitled to much weight against the state in determining the taxability of property. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8952; Thorne v. State, 145 Minn. 412, 177 N. W. 638. Rules of construction 'are not the masters of the courts, but merely their servants to aid them in ascertaining the legislative intent.' 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8937." (Italics supplied.)

Where the construction placed on a statute by public officials involves small amounts or questions of small importance, it is not likely that it would have been litigated or opposed. Such an interpretation is of less value and entitled to less weight than those involving amounts or questions which would be unlikely to be accepted without opposition. Here the cases relied upon by respondents, with one exception, involve such insignificant amounts that payment most likely would be

made rather than the charge contested. Under these circumstances, we do not consider such interpretation controlling or entitled to any substantial weight.

Some help in determining legislative intent may be obtained by reference to statutes dealing with similar matters.

Section 300.19, which relates to consolidation of corporations not formed under c. 301, reads:

"Upon filing any consolidation agreement, as provided for in sections 300.14 to 300.19, there shall be paid to the state treasurer the same fees as required on the filing of a certificate of the corporation, *less the total amount of the fees that have been theretofore paid to the state treasurer on account of filing the certificates of incorporation or renewals thereof and any amendments thereto increasing capital stock of all of the corporations parties to such consolidation agreement.*" (Italics supplied.)

Section 301.42, subd. 5, applies the same rule to consolidation of corporations formed under c. 301.

Section 303.15 also gives credit for taxes previously paid on total authorized capital in the case of a foreign corporation. That section provides in part:

"The secretary of state shall ascertain the license fee which under then existing laws a domestic corporation then organized would be required to pay if it had authorized shares of the same kind and amount as the issued or allotted shares of such foreign corporation shown by such filed report."

After setting forth the formula for allocation to Minnesota, the statute provides:

"* * * From the product of such multiplication *there shall be deducted the aggregate amount of license fees theretofore paid by such corporation,* and the remainder, if any, shall be the amount of additional license fee to be paid by such corporation." (Italics supplied.)

It is difficult to perceive any reason why the legislature would intend to discriminate against domestic corporations and require a tax on an authorized capital on which the tax had once been paid simply because

at one time there had been a reduction in the authorized capital. It is more reasonable to suppose that the legislature intended that a tax should be paid on the full amount of authorized capital but that it should be paid only once. Such construction of the statute is in harmony with practically all authorities that have considered the question. We are convinced that the trial court has reached the proper result.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.