CITY OF ROCHESTER, petitioner,
Respondent,

v.

PEOPLE'S COOPERATIVE POWER AS-
SOCIATION, INC., a corporation organized under the laws of the State of
Minnesota, Appellant,

United States of America, through its Administrator of the Rural Electrification
Administration, Lower Court Respondent,

National Rural Utilities Cooperative Finance Corporation, a corporation organized under the laws of the District of
Columbia, Lower Court Respondent.

No. CX–97–385.

Court of Appeals of Minnesota.

Aug. 26, 1997.

Joseph F. Chase, O'Brien, Ehrick, Wolf,
Deaner & Maus, L.L.P., Rochester, for Respondent.

Kenneth R. Moen, Dunlap & Seeger, P.A.,
Rochester, for Appellant.

Considered and decided by PARKER,
P.J., and DAVIES and FOLEY *, JJ.

* Retired judge of the Minnesota Court of Appeals,     art. VI, § 10.
  serving by appointment pursuant to Minn. Const.

## OPINION

DAVIES, Judge.

This is an appeal of a post-judgment order denying appellant's motion to dismiss a condemnation proceeding on the ground that respondent condemnor failed to timely comply with the payment requirement of Minn. Stat. § 117.195, subd. 1. We affirm.

## FACTS

In January 1990, respondent City of Rochester, on behalf of its municipal power utility, began a condemnation proceeding to obtain the right to provide electric service to the Willow Creek Sanitary Sewer District (Willow Creek) area. The Willow Creek area was within the exclusive electric service territory that had been assigned to appellant People's Cooperative Power Association, Inc. (People's).

The city appealed an October 1994 award by court-appointed commissioners and the case proceeded as a civil action in Olmsted County District Court. In January 1996, in response to the city's motion for partial summary judgment, the district court determined that People's would not receive any loss-of-revenue compensation for its service rights for the Rochester airport (within the Willow Creek area). In July 1996, the court granted a second motion by the city, this one to limit to a ten-year-period People's loss-of-revenue compensation for the rest of Willow Creek. The parties then entered into a stipulation for entry of judgment, specifically preserving their rights of appeal. Judgment in the amount of $781,202.07 was entered on August 15, 1996.

On November 8, 1996, People's appealed the January and July 1996 pretrial orders. By order opinion, this court dismissed the appeal as untimely, holding that eminent domain proceedings are special proceedings and, therefore, "appeal must be taken within the time permitted for appeal from an order." *City of Rochester v. People's Coop. Power Ass'n, Inc.*, No. CX–96–2272 (Minn. App. Nov. 26, 1996), *review denied* (Minn. Feb. 26, 1997).

When People's then asked the district court to dismiss the condemnation proceeding on the ground that the city had failed to comply with a statutory requirement of payment within 45 days of a final judgment, the city promptly delivered payment of the face amount of the judgment, with interest. Because People's declined to accept payment pending the outcome of its motion to dismiss and appellate review, the city, on January 3, 1997, deposited the payment draft with the district court administrator.

The district court denied People's motion to dismiss, finding that the city had "substantially complied with its statutory obligations." People's now appeals.

## ISSUE

Did the district court err in denying People's motion to dismiss the condemnation proceeding on the ground that the city failed to comply with the 45–day payment requirement in Minn.Stat. § 117.195?

## ANALYSIS

A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### A. Timeliness of Payment

Minnesota's eminent domain statute provides in part:

> If the award is not paid within 70 days after the filing, or, in case of an appeal within 45 days after final judgment, or within 45 days after a stipulation of settlement, the court, on motion of the owner of the land, *shall vacate* the award and dismiss the proceedings against the land.

Minn.Stat. § 117.195, subd. 1 (1996) (emphasis added). People's contends that, because the city did not pay the award within 45 days of final judgment, the district court was required to vacate the award and dismiss the condemnation proceeding. According to People's, judgment became final on September 23, 1996, when the time to appeal had expired. Based on this date, payment of the judgment was due by November 7, 1996.

If People's had not appealed the August 15, 1996, judgment, the dates cited would have been correct and the city should have made payment by November 7, 1996. *See Indianhead Truck Line, Inc. v. Hvidsten Trans., Inc.,* 268 Minn. 176, 183, 128 N.W.2d 334, 341 (1964) (judgment becomes final after appellate process is terminated or time for appeal has expired). Or, in the alternative, if People's had appealed the judgment in a timely manner, the appeal would have suspended the payment obligation until 45 days after the appellate process was terminated. *See Holen v. Minneapolis–St. Paul Metro. Airports Comm'n,* 250 Minn. 130, 136, 84 N.W.2d 282, 287 (1957) (appeal suspends judgment). But neither alternative happened here. People's brought its appeal, but not in a timely manner. The judgment, therefore, became final before the untimely appeal was taken.

If we were to accept People's argument that the proceedings must be dismissed because payment was not made by November 7, 1996, we would in effect be penalizing the city for its reliance on People's appeal (and People's earlier representations that it intended to appeal). We would also be penalizing the city for People's failure to file a timely appeal.[1] We see no reason for a penalty (or why People's should benefit from its own error). We therefore hold that, once People's brought its appeal, even though brought in an untimely manner, that appeal suspended the city's obligation to make payment until a reasonable time after February 26, 1997, the date the supreme court denied People's petition for review, terminating the appellate process. We will treat the city's attempted payment on December 23, 1996, and its payment to the court on January 3, 1997, as timely because they were immediate responses to People's first demand for payment.[2]

Peoples gives "shall" a rigidly mandatory reading, one that finds support in Minn.Stat. § 645.44, subd. 16 (1996) (" 'shall' is mandatory"). But this court has held that "the statute declares only a rule of construction for the aid of, but not binding on the courts." *Szczech v. Commissioner of Pub. Safety,* 343 N.W.2d 305, 307 (Minn.App.1984). This less rigid reading is confirmed by *State by Spannaus v. Dangers,* 368 N.W.2d 384, 386 (Minn. App.1985), *review denied* (Minn. Aug. 20, 1985). In *Dangers,* this court held that it would not employ a strict interpretation of Minn.Stat. § 117.195 if the condemnor was in substantial compliance with its statutory obligations.

## B. Substantial Compliance

People's also argues that the city intentionally withheld payment so that, if People's appeal were successful and the case remanded, the city could abandon the district court proceeding (and later reinstitute it before the Minnesota Public Utilities Commission). Because we hold that the city's payment immediately after the first demand was timely, we need not address this issue, other than to note that People's assertion that the city intended all along to abandon the district court proceeding is wholly speculative. There is no indication in the record that the city, by delaying its payment of the compensation award, was acting in bad faith. Rather, the record indicates that the city fully intended to pay the judgment but was awaiting the outcome of the anticipated appeal.

Further, once judgment is entered in a condemnation case, the condemnor can no longer abandon or dismiss the proceeding. *City of Maplewood v. Kavanagh,* 333 N.W.2d 857, 862 (Minn.1983). After August 15, 1996, the city could no longer abandon or dismiss the proceeding.

## DECISION

The mandatory dismissal of a condemnation was, in this situation, triggered only by a demand for payment. The city's

---

1. We believe that this would be a severe penalty. Were the proceedings to be dismissed, not only would both parties lose seven years of labor, but under the statute, People's could seek its reasonable costs and expenses, including attorney fees. Minn.Stat. § 117.195, subd. 2 (1996).

2. The record shows that People's did not demand payment before asserting that untimely payment defeated the condemnation.

payment, therefore, was timely under Minn. Stat. § 117.195, subd. 1.

**Affirmed.**