PHONE RECOVERY SERVICES, LLC, for itself and ON BEHALF OF the STATE of Minnesota, Appellant,

v.

QWEST CORPORATION, a Colorado company, et al., Respondents, Citizens Telecommunications Company of Minnesota, LLC, a Delaware company, et al., Respondents, Telephone and Data Systems, Inc., et al., Respondents, Pine Island Telephone

---

Company, et al., Respondents, Level 3 Communications, LLC, a Delaware company, et al., Respondents, Onvoy, LLC, et al., Respondents, Bandwidth.com CLEC, LLC, a Delaware company, et al., Respondents, MCC Telephony of Minnesota, LLC, a Delaware company, et al., Respondents, Jaguar Communications, Inc., et al., Respondents, Windstream Holdings, Inc., et al., Respondents, XO Communications, LLC, et al., Respondents, AT & T Corporation, et al., Respondents.

A17-0078

Court of Appeals of Minnesota.

Filed August 7, 2017

Review Granted Oct. 25, 2017

Katherine S. Barrett Wiik, Gary L. Wilson, Troy F. Tatting, Geoffrey H. Kozen, Robins Kaplan LLP, Minneapolis, Minnesota (for appellant).

Thomas H. Boyd, William A. McNab, David M. Aafedt, Winthrop & Weinstine, P.A., Minneapolis, Minnesota; and Misty Smith Kelley (pro hac vice), Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Chattanooga, Tennessee (for respondents Qwest Corporation, et al.).

Robert Cattanach, Bryan C. Keane, Dorsey & Whitney, LLP, Minneapolis, Minnesota (for respondents Citizens Telecommunications Company of Minnesota, LLC, et al.).

Curtis D. Smith, Richard J. Johnson, Moss & Barnett, P.A., Minneapolis, Minnesota (for respondents Telephone and Data Systems, Inc., et al.).

Michael J. Ahern, Edward B. Magarian, Dorsey & Whitney LLP, Minneapolis, Minnesota (for respondents Pine Island Telephone Company, et al.).

Thomas R. Muck, Aron J. Frakes, Emily A. Unger, Fredrikson & Byron, P.A., Minneapolis, Minnesota; and Megan Thibert-Ind (pro hac vice), McDermott Will & Emery, LLP, Chicago, Illinois (for respondents Level 3 Communications, LLC, et al.).

David G. Parry, Kadee J. Anderson, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondents Onvoy, LLC, et al.).

Gregory R. Merz, Gray Plant Mooty, Minneapolis, Minnesota (for respondents Bandwidth.com CLEC, LLC, et al.).

Monte A. Mills, Mark L. Johnson, Greene Espel PLLP, Minneapolis, Minnesota (for respondents Windstream Holdings, Inc., et al.).

Wayne E. Reames, Belin McCormick, P.C., Des Moines, Iowa (for respondents XO Communications, LLC, et al.).

Karla M. Vehrs, Lindquist & Vennum, Minneapolis, Minnesota (for respondents AT & T Corporation, et al.).

Considered and decided by Cleary, Chief Judge; Johnson, Judge; and Reilly, Judge.

## OPINION

CLEARY, Chief Judge

On appeal from the entry of judgment, appellant Phone Recovery Services LLC argues that the district court erred by relying on Minn. Stat. § 15C.03 in dismissing the amended complaint. Because the 911, TAM, and TAP charges are taxes, and because the statutes that require the collection and remittance of those charges are "[s]tatutes relating to taxation," we affirm.

## FACTS

In May 2014, appellant filed a complaint under seal and initiated a qui tam action pursuant to the Minnesota False Claims Act (MFCA), Minn. Stat. §§ 15C.01-.16 (2016).[1] In its complaint, appellant alleged that respondents, telecommunications service providers, undercharged their customers with respect to one or more of the following state statutory charges: (1) 911 charges; (2) TAM charges; and (3) TAP charges. Appellant alleged that respondents underpaid the charges to the state by: (1) failing to collect and remit the charges; (2) misclassifying services, including voice-over-internet-protocol (VoIP) services, as a service with lower charges; and (3) failing to charge and remit the

correct amount when providing customers with channelized services. The district court sealed the complaint and the state conducted an investigation. In September 2015, the state declined to intervene in the action. In October 2015, the district court ordered that the complaint be unsealed. Appellant thereafter filed and served an amended complaint, in which it alleged that respondents violated Minn. Stat. § 15C.02(a) and were liable to the state for

a. Knowingly, intentionally, deliberately, and/or recklessly making or using, or causing to be made or used, false records or statements material to their obligations to pay 911, TAM, and TAP fees to the State; and/or

b. Knowingly, intentionally, deliberately, and/or recklessly concealing or knowingly and improperly avoiding or decreasing their obligations to pay or transmit 911, TAM, and TAP fees to the State.

Respondents moved to dismiss appellant's amended complaint pursuant to Minn. R. Civ. P. 12.02(e). Following a hearing, the district court concluded that appellant's claims were barred by Minn. Stat. § 15C.03 and dismissed the amended complaint under rule 12.02(e). Judgment was entered on November 22, 2016.

## ISSUE

Did the district court err by relying on Minn. Stat. § 15C.03 in dismissing appellant's amended complaint?

## ANALYSIS

An appellate court's "review of a district court's decision to grant a motion to dismiss is ... de novo." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016).

---

1. In 2013, the legislature amended chapter 15C. 2013 Minn. Laws ch. 16, §§ 1-8, at 95-101. Although some of the events underlying this litigation predate the 2013 amendments, none of the amendments affect our analysis of the issues raised in this appeal. For this reason, we will refer to the 2016 version of chapter 15C.

In this review, an appellate court must "consider only the facts alleged in the complaint, accepting those facts as true and [construing] all reasonable inferences in favor of the nonmoving party." *Id.* (alteration in original) (quotation omitted). To determine whether the district court erred by granting respondents' joint motion to dismiss, we must limit our consideration to the facts alleged in the amended complaint, accept those facts as true, and construe all reasonable inferences in favor of appellant.

Appellant initiated a qui tam action under the MFCA, which imposes civil liability on a person who wrongfully acquires money or property from the state or a political subdivision, or wrongfully avoids an obligation to transmit money or property to the state or a political subdivision. Minn. Stat. § 15C.02(a). A person who violates the MFCA is liable to the state or political subdivision for a civil penalty, plus up to three times the amount of damages that the state or political subdivision sustained because of the violation.[2] Minn. Stat. § 15C.02(a)-(b) (providing that a violator may be liable for double or treble damages depending on the circumstances). But the tax bar of the MFCA, Minn. Stat. § 15C.03, prohibits MFCA claims based on tax violations. That section provides that the MFCA "does not apply to claims, records, or statements made under portions of the Minnesota Statutes relating to taxation." Minn. Stat. § 15C.03.

Here, the district court concluded that the 911, TAM, and TAP charges were taxes and relied on the MFCA tax bar in dismissing appellant's claims. Appellant argues that the district court erred because: (1) the 911, TAM, and TAP charges are not taxes; (2) the statutes that require service providers to collect and remit the 911, TAM, and TAP charges, Minn. Stat. §§ 237.52; .70; 403.11 (2016),[3] are not "[s]tatutes relating to taxation" for purposes of the tax bar; and (3) applying the tax bar to appellant's claims nullifies the reverse-false-claims provisions of the MFCA, contrary to the legislature's intent.

## I. The 911, TAM, and TAP Charges Are Taxes.

We first address appellant's argument that the 911, TAM, and TAP charges are fees rather than taxes. To determine whether the charges are taxes or fees, we must engage in statutory interpretation. Statutory interpretation presents a question of law, which appellate courts review de novo. *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Id.*; *accord* Minn. Stat. § 645.16 (2016). If the legislature's intent is clear from the statute's language, appellate courts apply the statute according to its plain meaning. *State v. Haywood*, 886 N.W.2d 485, 488 (Minn. 2016). "But if a statute is susceptible to more than one reasonable interpretation ... [appellate courts] will consider other

---

**2.** In a qui tam MFCA action, a private plaintiff is entitled to a certain percentage of any recovery of the civil penalty and damages or settlement. Minn. Stat. § 15C.13. The percentage value depends on whether, and at which point in the proceeding, the prosecuting attorney intervenes on behalf of the state or political subdivision. *Id.*

**3.** In 2012 and 2013, the legislature amended Minn. Stat. § 237.52. 2012 Minn. Laws ch.

216, art. 10, § 3, at 550-51; 2013 Minn. Laws ch. 143, art. 13, §§ 3-4, at 2669-70. And, in 2013 and 2014, the legislature amended Minn. Stat. § 403.11. 2013 Minn. Laws ch. 143, art. 13, §§ 14-16, at 2674-75; 2014 Minn. Laws ch. 212, art. 2, § 4, at 514-15. Because none of these amendments affect our analysis of the issues raised in this appeal, we will refer to the 2016 versions.

factors to ascertain the Legislature's intent." *Staab*, 853 N.W.2d at 717. Generally, when the legislature has statutorily defined a term, we are guided by that definition. *Wayzata Nissan, LLC v. Nissan N. Am., Inc.*, 875 N.W.2d 279, 286 (Minn. 2016). However, we will decline to apply the statutory definition when doing so would violate our principles of statutory interpretation. *Id.*; *see State v. Rick*, 835 N.W.2d 478, 483 (Minn. 2013) (declining to apply a statutory definition where its application would violate the canon against surplusage and the rules of grammar).

Minn. Stat. § 403.11 establishes the 911 charge and provides that an "[e]mergency telecommunications service fee" is assessed on customers who purchase telecommunications access lines that can be used to make 911 calls. Minn. Stat. § 403.11, subd. 1(a). This fee is based on the number of telephone lines, or their equivalents, and is used to cover the costs of the emergency telecommunications system. *Id.* The amount of the fee is established by the commissioner of public safety, with the approval of the commissioner of management and budget. *Id.*, subd. 1(c). Telecommunications service providers are required to collect the monthly fee from customers and remit the collected amount to the commissioner of public safety. Minn. Stat. §§ 403.02, subd. 10; .11, subd. 1(d) (2016). The collected fees are deposited into the 911 emergency telecommunications service account and are used to offset the costs of the 911 emergency telecommunications program. Minn. Stat. § 403.11, subd. 1(a), (d). "Money remaining in the ... account after all other obligations are paid ... is carried forward ... and may

be appropriated ... to provide financial assistance to counties for the improvement of local emergency telecommunications services." *Id.*, subd. 1(b).

The TAM charge is established by Minn. Stat. § 237.52. The TAM program provides devices and services to persons with communications disabilities. Minn. Stat. § 237.51, subd. 1 (2016).[4] Providers of services capable of originating a telecommunications-relay-services (TRS) call must collect monthly "surcharges" from customers. Minn. Stat. §§ 237.50, subd. 11; .52, subds. 2-3 (2016).[5] The amount of the charge is established by the public utilities commission and is imposed on each customer access line, including trunk equivalents. Minn. Stat. § 237.52, subd. 2(a). Service providers must remit the collected surcharges to the commissioner of public safety, who must then deposit the receipts in the TAM fund. *Id.*, subds. 1, 3. The money in the TAM fund is used to cover the costs of the TAM program. *Id.*, subd. 5.

The TAP charge is established by Minn. Stat. § 237.70. TAP is a program that provides telephone assistance to low-income individuals. Minn. Stat. § 237.70, subds. 3, 4a, 7. The public utilities commission obtains funding for TAP by assessing a uniform recurring monthly surcharge on access lines provided by each local service provider in the state. Minn. Stat. §§ 237.69, subd. 11; .70, subd. 6 (2016). The service providers must remit surcharge revenues to the department of public safety, which deposits the revenues into the telephone assistance fund. Minn. Stat.

---

4. In 2012, the legislature amended Minn. Stat. § 237.51. 2012 Minn. Laws ch. 216, art. 10, § 2, at 549-550. Because the 2012 amendment to Minn. Stat. § 237.51 does not affect our analysis of the issues raised in this appeal, we will refer to the 2016 version.

5. In 2012, the legislature amended Minn. Stat. § 237.50. 2012 Minn. Laws ch. 216, art. 10, § 1, at 547-49. Because the 2012 amendment to Minn. Stat. § 237.50 does not affect our analysis of the issues raised in this appeal, we will refer to the 2016 version.

§§ 237.70, subd. 7(d)(4); .701 (2016).[6] The money in the telephone assistance fund is used to cover the costs of TAP. Minn. Stat. § 237.701.

The legislature used different language to describe the 911, TAM, and TAP charges. While the 911 charge is called a "fee," the TAM and TAP charges are called "surcharges." Minn. Stat. §§ 237.52, subd. 2; .70, subd. 6; 403.11, subd. 1. However, the 911, TAM, and TAP charges are similarly collected and used. Each is a monthly charge imposed on customers who purchase telecommunications access lines. Minn. Stat. §§ 237.49; .52, subds. 2-3; .70, subd. 6; 403.11, subd. 1(a), (d) (2016).[7] Money collected from each charge is remitted to the department of public safety and deposited into a separate fund or account and used to cover the costs of the service or program for which the charge was imposed. Minn. Stat. §§ 237.49; .52, subds. 1, 3, 5; .70, subd. 7(d)(4); .701; 403.11, subd. 1.

## A. *Statutory Definition of "Tax"*

■ Appellant argues that the district court erred by concluding that the 911, TAM, and TAP charges are taxes. Appellant incorrectly asserts that, under the district court's order, all payments to the state that are required by statute or regulation are taxes. To the contrary, the order provides that the 911, TAM, and TAP charges are taxes because they come within the definition of "tax" under Minn. Stat. § 645.44 (2016), and, alternatively, because the charges are taxes under the common law.

Minn. Stat. § 645.44 is a general definition section. Minn. Stat. § 645.44, subd. 1; *see Dayton Hudson Corp. v. Johnson*, 528 N.W.2d 260, 262 (Minn. App. 1995) (noting that the legislature generally defined "person" in Minn. Stat. § 645.44). A definition provided in Minn. Stat. § 645.44 is a rule of construction. *City of Rochester v. People's Coop. Power Ass'n Inc.*, 567 N.W.2d 764, 766 (Minn. App. 1997), *review denied* (Minn. Oct. 31, 1997); *Szczech v. Comm'r of Pub. Safety*, 343 N.W.2d 305, 307 (Minn. App. 1984). "The ... words, terms, and phrases used in Minnesota Statutes ... have the meanings given them in ... [Minn. Stat. § 645.44], unless another intention clearly appears." Minn. Stat. § 645.44, subd. 1.

Minn. Stat. § 645.44, subd. 19(a), defines "tax" to mean "any fee, charge, exaction, or assessment imposed by a governmental entity on an individual, person, entity, transaction, good, service, or other thing." But "a price that an individual or entity chooses voluntarily to pay in return for receipt of goods or services provided by the governmental entity" is not a tax. Minn. Stat. § 645.44, subd. 19(a). "A government good or service does not include access to or the authority to engage in private market transactions with a nongovernmental party, such as licenses to engage in a trade, profession, or business or to improve private property." *Id.* "[A] 'fee,' 'charge,' or other similar term that satisfies the functional requirements of [subdivision 19(a) ] must be treated as a tax for all purposes, regardless of whether the statute or law names or describes it as a tax." *Id.*, subd. 19(b).

6. In 2012, the legislature amended Minn. Stat. § 237.701. 2012 Minn. Laws ch. 290, § 71, at 1428. Because the 2012 amendment to Minn. Stat. § 237.701 does not affect our analysis of the issues raised in this appeal, we will refer to the 2016 version.

7. In 2016, the legislature amended Minn. Stat. § 237.49. 2016 Minn. Laws ch. 115, § 9, at 144-45. Because the 2016 amendment to Minn. Stat. § 237.49 does not affect our analysis of the issues raised in this appeal, we will refer to the 2016 version.

Because the 911, TAM, and TAP charges are fees, charges, exactions, or assessments imposed by a governmental entity on an individual, person, entity, transaction, good, service, or other thing, they come within the general definition of "tax" under Minn. Stat. § 645.44, subd. 19. Appellant argues that these charges are not taxes under Minn. Stat. § 645.44, subd. 19, because they are only assessed on people and entities who choose to voluntarily pay the charges in return for receipt of governmental goods or services. Appellant explains that the 911 charge is assessed only on those whose telecommunications access lines can be used to make 911 calls, and that the TAM charge is assessed only on those whose telecommunications access lines are capable of originating a TRS call. Appellant argues that because these charges are part of the price of choosing to have control over and individual access to a telecommunications access line that can use these governmental services, they are excluded from the definition of "tax" under Minn. Stat. § 645.44, subd. 19.[8]

No Minnesota appellate court has yet determined whether the 911, TAM, and TAP charges are prices voluntarily paid for receipt of governmental goods or services. We agree with the district court's determination that these charges are not prices voluntarily paid in return for governmental goods or services. First, the 911, TAM, and TAP charges are not prices voluntarily paid. The mere act of voluntarily purchasing, from a private entity, a telecommunications access line subject to governmentally imposed charges does not constitute a choice to voluntarily pay a price in return for governmental goods or services provided. Second, those who pay the 911, TAM, and TAP charges do not necessarily receive governmental goods or services. The government makes emergency response available statewide and provides the TAM and TAP services based on need, not based on whether the statutorily imposed charges have been paid. Although those who pay the charges have increased access to the 911 and TRS services, they may never actually utilize such services. And others who do not pay such charges may benefit from the services. A person can access Minnesota's 911 emergency services or make a TRS call without paying 911 or TAM charges by calling from another person's telephone or a payphone. Even a person who fails to make a 911 call may benefit from Minnesota's 911 emergency services when another person calls on his behalf. For these reasons, the 911, TAM, and TAP charges are not prices voluntarily paid in return for receipt of governmental goods or services.[9] Rather, these charges

8. Unlike the other charges, the TAP charge is "applicable to all classes and grades of access lines provided by each local service provider in the state" and is not limited to those access lines that can be used to access governmental services. Minn. Stat. § 237.70, subd. 6.

9. Our conclusion is supported by the decisions of courts of other states. Although decisions from the courts of other states are not binding, they may be persuasive. *Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984). Courts in California, Massachusetts, and New York have rejected the assertion that 911 charges are voluntarily paid in return for government services. *Bay Area Cellular Tel. Co. v. City of Union City*, 162 Cal.App.4th 686, 75 Cal.Rptr.3d 839, 847 (2008), *review denied* (Cal. Aug. 13, 2008); *Phone Recovery Servs., LLC v. Verizon of New England, Inc.*, No. CV1500783BLS1, 2015 WL 8331983, at *1, *4-5 (Mass. Super. Ct. Oct. 27, 2015); *Kessler v. Hevesi*, No. 104482/05, 12 Misc.3d 1181(A), 2006 WL 1915115, at *9 (N.Y. Sup. Ct. June 28, 2006), *aff'd as modified*, 45 A.D.3d 474, 846 N.Y.S.2d 56 (2007). The First District Court of Appeal of California noted that the 911 charge is "not imposed in exchange for the voluntary decision to seek a governmental service, but is instead imposed in response to the decision to seek telephone service from a private provider." *Bay Area Cellular*, 75 Cal.

are taxes under Minn. Stat. § 645.44, subd. 19.

Because we conclude that the 911, TAM, and TAP charges are taxes under Minn. Stat. § 645.44, subd. 19, we must determine whether Minn. Stat. § 645.44, subd. 19, applies or whether "another intention clearly appears." *See* Minn. Stat. § 645.44, subd. 1 (providing that the definitions enumerated in Minn. Stat. § 645.44 govern unless another intention clearly appears). Appellant argues that the legislature did not intend for the 911, TAM, and TAP charges to be taxes. When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other things, any former laws upon the same or similar subjects and legislative and administrative interpretations of the statute. Minn. Stat. § 645.16 (2016).

Appellant argues that the legislature chose to describe the 911, TAM, and TAP charges as "fees" and "surcharges" and that, if the legislature intended the charges to be taxes, it could have simply called the charges "taxes." Generally, "words and phrases are construed ... according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning, or are defined in [chapter 645], are construed according to such special meaning or their definition." Minn. Stat. § 645.08(1) (2016). "[W]henever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant" by this court's interpretation of a statute.

*Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 551 (Minn. 2016) (alteration in original).

In Minn. Stat. § 645.44, subd. 19, the legislature has specifically defined "tax" to include certain " 'fee[s],' 'charge[s],' or other similar term[s]," and that definition controls over the common usage. If we were to conclude that the legislature's failure to explicitly call the 911, TAM, and TAP charges "taxes" was sufficient to show that the legislature intended the charges to be treated as something other than taxes, we would render Minn. Stat. § 645.44, subd. 19, meaningless. The fact that the legislature did not refer to the charges as "taxes" does not establish that it did not intend the charges to be taxes.

Appellant also argues that, by changing the funding of the 911 system from general-fund revenues to "fees," the legislature clearly indicated an intent to impose the 911 charges as fees. In 1978, the legislature provided that the costs of "911 service shall be paid from the general fund of the state treasury." 1978 Minn. Laws ch. 680, § 1, at 508 (codified at Minn. Stat. § 403.11, subd. 1 (1978)). In 1985, the legislature amended the statute so that fees assessed on customers would cover the costs of the 911 emergency telephone service. 1985 Minn. Laws 1st Spec. Sess. ch. 13, § 330, at 2280-81 (codified at Minn. Stat. § 403.11, subd. 1 (Supp. 1985)). But to determine whether the legislature intended the 911 charge to be construed as a fee during the time period relevant to this appeal, we must also consider the subse-

Rptr.3d at 847; *accord Verizon of New England*, 2015 WL 8331983, at *5 (concluding that the 911 charge was not voluntary because all customers paying a telephone bill were required to pay the charge); *Kessler*, 2006 WL 1915115, at *9, *11 (concluding that 911 charges imposed on wireless customers were compulsory). California, Massachusetts, and New York courts have also agreed that

those paying the 911 charge receive no particular benefit because the 911 system benefits the general public and provides emergency services to all, whether or not the person requesting the emergency service has paid the 911 charge. *Bay Area Cellular*, 75 Cal.Rptr.3d at 846; *Verizon of New England*, 2015 WL 8331983, at *4; *Kessler*, 2006 WL 1915115, at *9, *11.

quent enactment of Minn. Stat. § 645.44, subd. 19.

In 2006, the legislature enacted Minn. Stat. § 645.44, subd. 19, and defined "tax" to include certain " 'fee[s],' 'charge[s],' or other similar term[s]." 2006 Minn. Laws ch. 259, art. 13, § 15, at 705-06 (codified at Minn. Stat. § 645.44, subd. 19 (2006)). Appellate courts "assume that the Legislature enacts statutes with full knowledge of prior legislation on the same subject." *State v. Leathers*, 799 N.W.2d 606, 609 (Minn. 2011) (quotation omitted). Assuming that the legislature was aware that its prior legislation imposed a "fee" on customers to cover the costs of 911 emergency services, the enactment of Minn. Stat. § 645.44, subd. 19, indicates that the legislature intended for that "fee" to be treated as a tax if the functional requirements of Minn. Stat. § 645.44, subd. 19(a), were met, and if no other intention clearly appeared. The legislature's decision to change the funding of the 911 system from general-fund revenues to "fees" does not show that the legislature intended the 911 charges to be fees during the time period relevant to this appeal.

■ Appellant argues that the legislature clearly intended the 911, TAM, and TAP charges to be fees because the state and its agencies treat the charges as fees. Appellant explains that the 2016-2017 biennial budget, which was presented by Governor Mark Dayton, describes the 911, TAM, and TAP charges as "departmental earnings," a term that specifically excludes general taxes. Minnesota Biennial Budget

FY 2016-2017, https://mn.gov/mmb/assets/16-17-DE-agency_tcm1059-124173.pdf; *see* Minn. Stat. § 16A.1285, subd. 1 (2016). Similarly, appellant notes that a fee submission form used to remit the 911, TAM, and TAP charges to the department of public safety includes an informational sheet, which explains that the fees generally apply to tax-exempt organizations because "[t]he fees are not taxes." [10] And appellant argues that the 911, TAM, and TAP charges cannot be taxes because, if they were, the department of public safety and the public utilities commission have been wrongfully charging tax-exempt organizations for years.

■ Although the opinions of executive officials and agencies are entitled to careful consideration, they are not binding. *N. States Power Co. v. Donovan*, 258 Minn. 125, 130-31, 103 N.W.2d 126, 129-30 (1960); *Minn. Daily v. Univ. of Minn.*, 432 N.W.2d 189, 194 (Minn.App. 1988), *review denied* (Minn. Jan. 25, 1989). And " '[t]he mere fact that illegal taxes have been levied and collected in the past should not be conclusive against a construction obviously fitting.' " *Donovan*, 258 Minn. at 131, 103 N.W.2d at 130 (emphasis omitted) (quoting *Bd. of Educ. v. Borgen*, 192 Minn. 367, 373, 256 N.W. 894, 897 (1934)). Although executive officials and agencies have, at times, treated the 911, TAM, and TAP charges as fees, we are not bound to follow this executive interpretation. Because the 911, TAM, and TAP charges are taxes within the meaning of Minn. Stat. § 645.44, subd. 19, and because no clear legislative intention

---

10. The informational sheet's preceding paragraph provides that companies can consider federal government customers exempt from the 911, TAM, and TAP charges because the state's power to collect from federal agencies is a constitutional matter. Because a state may not constitutionally tax the federal government, this statement suggests that the charges are taxes. *See United States v. New* *Mexico*, 455 U.S. 720, 733, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982) (concluding that the supremacy clause would be violated if a state imposed a tax on the federal government). Here, the informational sheet appears to treat the charges as taxes in one instance and as fees in another. For this reason, the informational sheet does not establish that the state understands the charges to be fees.

to treat the charges as something other than taxes is apparent to us, we conclude that the charges are taxes under Minn. Stat. § 645.44.

### B. *Common-law Definition of "Tax"*

Even if we were to accept appellant's argument that Minn. Stat. § 645.44 does not apply here, we would nonetheless conclude that the 911, TAM, and TAP charges are taxes under the common law. In *First Baptist Church of St. Paul v. City of St. Paul*, 884 N.W.2d 355, 356-59 (Minn. 2016), the Minnesota Supreme Court considered whether a right-of-way (ROW) assessment was a police-power fee or a taxing-power special assessment. In its opinion, the supreme court did not address Minn. Stat. § 645.44, but instead relied upon the common-law distinction between fees and taxes. 884 N.W.2d at 359-65. To determine whether the assessment was a tax, the supreme court considered the following factors: (1) the city's characterization of the assessment; (2) the manner in which the funds were kept; (3) the persons upon whom the assessment was imposed; and (4) the manner in which those who paid the assessment were benefited by the funds collected. *Id.*

Although not dispositive, the city's characterization of the ROW assessment as a "charge for services," and the segregation of the funds collected from the assessment suggested that the assessment was a fee. *Id.* at 360-64. But the widespread imposition of the assessment and the city's failure to tie the assessment to the payers' receipt of governmental goods or services or to the need to regulate the payers' activities suggested that the assessment was a tax. *Id.* at 362-64. Finally, the fact that "many of the services funded through the ROW assessment benefit[ed] the general public in precisely the same manner as they benefit[ed] the properties as-

sessed" also suggested that the assessment was a tax. *Id.* at 362. Weighing these factors, the supreme court concluded that the ROW assessment was a tax because it was imposed nearly city wide and was a revenue measure that largely benefited the general public. *Id.* at 365; *see Country Joe, Inc. v. City of Eagan*, 560 N.W.2d 681, 686 (Minn. 1997) (concluding that a charge was a tax where it was not purely a regulatory or license fee, but was instead a revenue-raising measure that benefited the public generally); *cf. Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 788 (Minn. App. 2011) (concluding that a city's assessment for an areaway removal was a regulatory service fee where the service provided a direct benefit to the property assessed and affected only that property).

Appellant argues that, under *First Baptist*, the 911, TAM, and TAP charges are fees rather than revenue-raising measures. We disagree. Although the legislature's characterization of the 911 charge as a "fee" suggests that it is a fee, its characterization of the TAM and TAP charges as "surcharges" is neutral. *See* Minn. Stat. §§ 237.52, subd. 2 (using the term "surcharge"); .70, subd. 6 (using the term "surcharge"); 403.11, subd. 1 (using the term "fee"). The segregation of the funds collected from each charge also suggests that the charges are fees, but neither the legislature's description of the charges nor the segregation of funds is dispositive. Minn. Stat. §§ 237.52, subds. 1, 3, 5; .70, subd. 7(d)(4); .701; 403.11, subd. 1; *First Baptist*, 884 N.W.2d at 360-61, 364.

Here, the imposition of the charges is not based on a person's use of the services funded by the charges or the necessity of regulating a person's activities. Like the assessment in *First Baptist*, the 911, TAM, and TAP charges are not imposed on a limited group of payers. Rather, the charges are broadly imposed on customers

who purchase telecommunications access lines. The widespread imposition of the 911, TAM, and TAP charges, and the legislature's decision not to tie the charges to an individual's use of the services funded by those charges, are indicative of a tax.

The funds from the 911, TAM, and TAP charges benefit the general public in the same manner as they benefit the customers upon whom the charges are imposed. Those who pay the charges receive increased access to the services funded by the charges. But a person's increased access to a service does not change the manner in which the person is benefited by that service. *See First Baptist*, 884 N.W.2d at 356-57, 362 (explaining that street maintenance in the City of St. Paul benefits city property owners who pay the ROW assessment in the same manner as it benefits

visitors and commuters who travel through St. Paul). The fact that the services funded by the charges benefit the general public in the same manner that they benefit customers who pay the charges suggests that the charges are taxes.

Here, as in *First Baptist*, the enacting authority's description of the charges and the segregation of the funds collected indicate that the charges are fees, but the remaining factors indicate that they are taxes. Following *First Baptist*, we conclude that the 911, TAM, and TAP charges are revenue-raising taxes under the common law.[11]

The 911, TAM, and TAP charges are taxes under both Minn. Stat. § 645.44 and the common law. The district court did not err by concluding that the charges are taxes.[12]

---

**11.** Appellant attempts to distinguish this case from *First Baptist* and argues that the 911, TAM, and TAP charges provide for specific services, unlike the ROW assessment, which was used to "pay[] for a wide array of city services." 884 N.W.2d at 364. The funds collected from the ROW assessment at issue in *First Baptist* were used for the general purpose of maintaining street safety and could be spent on a variety of services advancing that purpose. *Id.* at 357.

Similarly, the funds collected from the 911, TAM, and TAP charges must be used to advance the purpose for which each charge was imposed, but may be used to provide a variety of governmental goods and services. *See* Minn. Stat. §§ 237.52, subd. 5 (stating manner in which TAM funds can be used); .701, subd. 1 (stating manner in which TAP funds can be used); 403.11, subd. 1 (stating manner in which funds in the 911 emergency telecommunications service account can be used). Because the 911, TAM, and TAP charges, like the ROW assessment, may be used in various ways to advance the purpose for which each charge was imposed, we do not think that this case is distinguishable from *First Baptist*.

**12.** Appellant relies on *Cobb County v. Earthlink, Inc.*, No. 15-A-13381-4, slip op. at 7 (Ga. Super. Ct. July 14, 2016), and *Phone Recovery Servs., LLC v. Verizon Pa., Inc.*, No. GD-14-

021671, 2016 WL 2638829, at *7-8 (Pa. Ct. Com. Pl. Apr. 21, 2016), both of which concluded that 911 charges are not taxes. Decisions from the courts of other states are not binding, but may be persuasive. *Mahowald*, 344 N.W.2d at 861. Because the cases on which appellant relies are distinguishable from the case before us, we are not persuaded.

In *Earthlink*, a Georgia court determined that the 911 services available to resident users in the plaintiff counties might have differed from the 911 services offered to the general public residing elsewhere in the state because: (1) the plaintiff counties contended that they provided enhanced 911 services that display a caller's home address and location on a map; and (2) residents could subscribe to "Smart 911" services that allowed them to preregister anticipated 911 needs. *Earthlink*, slip op. at 6. Relying in part on the fact that payers may have received a different level of service, the court concluded that the 911 charges were fees rather than taxes. *Id.* at 7. Here, appellant does not argue that customers who pay the 911 charge in Minnesota receive special 911 services, but rather that they receive increased access to 911 services. As a result, this case is distinguishable from *Earthlink*.

In *Verizon Pa.*, a Pennsylvania court determined that *White v. Commonwealth Med.*

## II. The Statutes Requiring the Collection and Remittance of the 911, TAM, and TAP Charges Are "Statutes Relating to Taxation."

We next consider appellant's argument that the statutes that require service providers to collect and remit the 911, TAM, and TAP charges, Minn. Stat. §§ 237.52; .70; 403.11, are not "Minnesota Statutes relating to taxation." The MFCA tax bar provides that chapter 15C "does not apply to claims, records, or statements made under portions of Minnesota Statutes relating to taxation." Minn. Stat. § 15C.03. Appellant argues that "[s]tatutes relating to taxation" refers only to those statutes in the Minnesota tax code, which appellant identifies as chapters 270 through 299. Because Minn. Stat. §§ 237.52; .70; and 403.11 fall outside of chapters 270 through 299, appellant argues that those statutes do not relate to taxation within the meaning of the MFCA tax bar.

Statutory interpretation is a question of law, which appellate courts review de novo. *Staab*, 853 N.W.2d at 716. Our analysis begins with the language of the statute. *In re A.D.*, 883 N.W.2d 251, 256 (Minn. 2016). Absent a statutory definition, we generally turn to the plain meaning of a statutory phrase, which we determine by dictionary definitions. *Haywood*, 886 N.W.2d at 488; *In re A.D.*, 883 N.W.2d at 256; *Wayzata Nissan*, 875 N.W.2d at 286.

Because the legislature did not define "relating to taxation" by statute, we turn to the plain and ordinary meaning of the terms as determined by their dictionary definitions. *See* Minn. Stat. §§ 15C.03, 645.44 (failing to define "relating to taxation"). To "relate" is generally defined to mean to have connection, relation, or reference or to concern. *New Oxford American Dictionary* 1473 (3d ed. 2010) (defining "relate to" as "having reference to; concern"); *Merriam-Webster's Collegiate Dictionary* 1050 (11th ed. 2003) (defining "relate" as "to have relationship or connection"); *The American Heritage Dictionary of the English Language* 1472 (4th ed. 2000) (defining "relate" as "[t]o have connection, relation, or reference"). "Taxation" is generally defined to mean the imposition or levying of tax, the amount assessed as tax, or revenue gained from taxes. *New Oxford, supra*, at 1779 (defining "taxation" as "the levying of tax"; and "money paid as tax"); *Merriam-Webster's, supra*, at 1280 (defining "taxation" as "the action of taxing; *esp* : the imposition of taxes"; "revenue obtained from taxes"; and "the amount assessed as a tax"); *American Heritage, supra*, at 1773 (defining "taxation" as "[t]he act or practice of imposing taxes"; "[t]he fact of being taxed"; "[a]n assessed amount of tax"; and "[r]evenue gained from taxes"). A statute is one "relating to taxation" within the plain meaning of the phrase if the statute has a connection, relation, or reference to or concerns the imposition of a tax, the amount assessed as tax, or the revenue gained from taxes.

*Prof'l Liab. Catastrophe Loss Fund*, 131 Pa. Cmwlth. 567, 571 A.2d 9, 11 (1990), was the most recent Pennsylvania appellate court case addressing whether a revenue-producing law was a tax or fee. 2016 WL 2638829, at *3. The court concluded that, under *White*, a charge is not a tax if the funds raised are to be held in trust and deposited in a segregated account for a specific purpose. *Id.* at *5. Under Pennsylvania law, it appears that the segregation of funds into a separate account to be used for a specified purpose is dispositive and establishes that the charge by which the funds were collected is a fee. *Id.* Because the segregation of funds is merely one of several factors to be considered under Minnesota law, we are not persuaded to follow *Verizon Pa. See First Baptist*, 884 N.W.2d at 364 (stating that the segregation of funds is not dispositive).

Because the 911, TAM, and TAP charges are taxes, Minn. Stat. §§ 237.52; .70; and 403.11 are "[s]tatutes relating to taxation" according to the phrase's plain meaning. Each of these statutes has a connection, relation, or reference to or concerns taxation because each provides for the imposition of a tax and states how the amount of the assessed tax is to be determined. Minn. Stat. §§ 237.52; .70; 403.11.

Appellant asserts that applying the tax bar to appellant's claims is contrary to legislative intent and undermines the policy objectives of the MFCA. For these reasons, appellant argues that this court should conclude that Minn. Stat. §§ 237.52; .70; and 403.11 are not "[s]tatutes relating to taxation." But "[w]hen a word or phrase has a plain meaning, [appellate courts] presume that the plain meaning is consistent with legislative intent and engage in no further statutory construction." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016); *see State ex rel. Duncan v. Roy*, 887 N.W.2d 271, 276 (Minn. 2016) (providing that appellate courts interpret a statute according to its plain meaning and do not resort to other statutory-interpretation principles when legislative intent is clear from the statute's unambiguous language); *Haywood*, 886 N.W.2d at 491 (stating that the courts are only to apply the statute and should not make, amend, or change statutory law); *Schroeder v. W. Nat. Mut. Ins. Co.*, 865 N.W.2d 66, 70 (Minn. 2015) (explaining that plain, unambiguous statutory language is assumed to manifest legislative intent and must be given effect). Because "relating to taxation" has a plain and ordinary meaning, we must apply that meaning and will not engage in further statutory construction. Minn. Stat. §§ 237.52; .70; and 403.11 are "[s]tatutes relating to taxation" within the meaning of Minn. Stat. § 15C.03.

## III. Applying the Tax Bar to Appellant's Claims Does Not Nullify the Reverse-false-claims Provisions of the MFCA.

■ Finally, we address appellant's assertion that applying the tax bar to appellant's claims nullifies the reverse-false-claims provisions of the MFCA. The Minnesota Supreme Court has refused to apply the definitions provided by Minn. Stat. § 645.44 when such application would render a statutory provision superfluous. *In re Welfare of S.L.J.*, 782 N.W.2d 549, 558 (Minn. 2010) (refusing to apply the definitions of Minn. Stat. § 645.44, subds. 15-16, where doing so would render a statutory provision superfluous). We must determine whether applying Minn. Stat. § 645.44, subd. 19, under the circumstances presented here will nullify the reverse-false-claims provisions of the MFCA.

■ The reverse-false-claims provisions impose liability on a person who

(4) has possession, custody, or control of property or money used, or to be used, by the state or a political subdivision and knowingly delivers or causes to be delivered less than all of that money or property; ... or

(7) knowingly makes or uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a political subdivision, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a political subdivision.

Minn. Stat. § 15C.02(a). Like the reverse-false claims that can be asserted under the federal false-claims act, reverse-false claims under the MFCA impose liability for a person's avoidance of a payment due to the government. *See United States ex rel. Matheny v. Medco Health Sols., Inc.,*

671 F.3d 1217, 1222 (11th Cir. 2012) (explaining that a reverse-false claim imposes liability for "avoiding the payment of money due to the government"); *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004) (explaining that a defendant is liable in a reverse-false-claims suit if his action results in no payment to the government when payment is required).

We cannot agree that applying the tax bar to appellant's claims renders Minn. Stat. § 15C.02(a)(4), (7) meaningless. To the contrary, the reverse-false-claims provisions will continue to be effective where the alleged violations involve claims, records, or statements that are *not* made under portions of Minnesota Statutes relating to taxation. Such claims might be based on the retention of an overpayment, a contractual duty, or an obligation to pay a statutory fee, among other things. Many reverse-false claims remain even if we apply Minn. Stat. § 645.44 and conclude that the 911, TAM, and TAP charges are taxes and that claims based on Minn. Stat. §§ 237.52; .70; and 403.11 are prohibited by the tax bar. Because applying Minn. Stat. § 645.44 does not nullify the reverse-false-claims provisions of the MFCA, we apply it here.[13]

## DECISION

The 911, TAM, and TAP charges are taxes, and Minn. Stat. §§ 237.52; .70; and 403.11, which require those charges to be collected and remitted, are "[s]tatutes relating to taxation." For these reasons, appellant's MFCA claims, which were based on respondents' alleged underpayment of the 911, TAM, and TAP charges, are prohibited by the tax bar. The district court

13. Because we conclude that the district court did not err by relying on the tax bar to dismiss appellant's amended complaint, we do not reach respondents' arguments that ap-

did not err by relying on Minn. Stat. § 15C.03 in dismissing appellant's amended complaint.

**Affirmed.**

pellant's claims fail under the public-disclosure bar and Minn. R. Civ. P. 9.02, which requires that fraud be pleaded with particularity.