# CHARLESTON.

MARTIN v. ROTHWELL.

MARTIN, TRUSTEE v. OATES.

MARTIN, TRUSTEE v. EMMERT (F. S.)

MARTIN, TRUSTEE v. CUSHWA.

MARTIN, TRUSTEE v. EMMERT (H. H.)

Submitted February 12, 1918.    Decided February 26, 1918.

1. CORPORATIONS—*Subscription to Stock—Acceptance—Validity.*

   A subscription to the capital stock of a corporation subsequently to be formed, and not revoked before the organization thereof, is valid upon the acceptance thereof by such corporation after its formation and organization. (p. 685).

2. SAME—*Subscriptions to Stock—Conditions Precedent.*

   If said subscription is made upon the condition that certain things will be performed by the proposed corporation, such proposed corporation by the acceptance of said subscription undertakes to perform the conditions under which it is made. (p. 683).

3. CONTRACTS—*Construction—Recitals or Preamble.*

   The obligation of the parties to a contract is not determined by the recitals therein, or the preamble thereto, but such recitals or preamble may serve the purpose of limiting or defining such obligation where the extent thereof is by the obligatory terms of the contract uncertain, indefinite or ambiguous. (p. 683).

Cases certified from Circuit Court, Berkeley County.

Separate suits by C. E. Martin, trustee, against J. M. Rothwell and others. Demurrers to the declarations overruled, and cases certified.

*Judgments affirmed, and causes remanded.*

*S. W. Walker, A. C. McIntire* and *John H. Zirkle,* for plaintiff.

*D. W. Snyder, Jr.,* and *H. H. Emmert,* for defendants.

RITZ, JUDGE:

The declarations in these cases aver that the respective defendants, by signing their names to the following paper, pledged themselves as subscribers to the stock of the corpor-

ation thereafter formed under, said. agreement. The agreement and contract referred to is in the following language:

"Whereas: the Norwalk Motor Car Company, of Norwalk, Ohio, has expressed a willingness to remove its entire plant, patterns, designs, drawings, patents, patents applied for and to be applied for, good will and fixtures to Martinsburg, West Virginia: And to reorganize its company by procuring a new charter under the laws of the State of West Virginia provided the citizens of Martinsburg will subscribe the sum of $75,000 for a contemplated preferred stock issue; and

"Whereas: under the reorganization of said company the Norwalk Motor Car Company has agreed to accept as full compensation for its entire plant and improvements in motor cars and commercial trucks $100,000 of common stock of said company and of a total issue of stock of $137,500 common stock; that the said Norwalk Motor Car Company agrees to give from said capitalization one share of common stock for each two shares of preferred stock and further in the organization of said company as aforesaid three out of seven of its Board of Directors shall be selected annually by the subscribers to said preferred stock, said preferred stock to bear 7% interest to be paid semi annually.

"Now, therefore, we the undersigned, do hereby bind ourselves, our heirs and assigns, for the amount opposite our names as our subscriptions to said preferred stock, said subscriptions not to be binding on us and each one of us until at least $50,000 of said preferred. stock has been subscribed; and when said $50,000 preferred stock is so subscribed this subscription becomes operative and the organization of said Company under the laws of West Virginia may proceed.

"It is further understood between the subscribers and the said· Norwalk Motor Car Company that the said $75,000 derived from the said preferred stock subscriptions is to be used as capital in the business of said company and no part of same is to be expended on any stockholders of the present Norwalk Motor Car Company, and said expenditures on behalf of said company shall be so expended by the new board of directors of the new organized company three of which are to be named as aforesaid by the preferred stockholders.

. "Said subscription shall be paid as follows: 25% of the amount subscribed when $50,000 or more has been taken; the residue to be payable in four, eight and twelve months from that date, the subscriber to give good commercial paper for the deferred payments with interest, or the same may be paid in cash."

The declarations each contain two special counts. In the first count the pleader attempts to allege that all of the things referred to in the two recital paragraphs of the above contract have been performed, as well as those things referred to in the last three paragraphs of the contract. The second count only avers the performance of the conditions and stipulations referred to in the last three paragraphs of the paper. In both counts it is averred that these subscriptions were accepted by the Norwalk Motor Car Company, and that the defendants thereby respectively became liable to pay the amounts which they set opposite their names.

It is insisted by the defendants on demurrer that all of the statements contained in the two recital paragraphs of the contract are conditions precedent, and must be performed before there is a right to sue for the subscriptions, and they insist that the declaration, while the first count attempts to show a compliance with these conditions, fails in that regard; while the plaintiff contends that the two paragraphs containing the preamble or recitals are not in any sense the obligation of the parties, but that such obligation is fixed in the latter three paragraphs of the contract, and that it is sufficient to aver a compliance with the requirements thereof; that the paragraphs containing the recitals can only be looked to to determine what the parties were contracting about, or to make clear any ambiguity that may exist in the obligatory part of the contract. It seems to be quite clear that paragraphs in a contract containing recitals of the purposes and intentions of the parties thereto are not strictly speaking parts of the contract, unless adopted as such by reference thereto. The obligation of the parties to each other are not fixed by the terms of these recitals, and the only purpose thereof is to define or limit the obligations which the parties have taken upon themselves where the extent thereof is un-

certain, or to aid in interpreting any ambiguous language used in expressing such obligation. Such preambles or recitals in a contract are analogous to the preamble in a statute. It is no part of the statute, but frequently it is looked to in determining the proper construction of the act. It ordinarily declares the mischief which it is the intention of the legislature to correct by the passage of the act, and thus offers valuable aid in construing a statute ambiguous on its face. And so in contracts where a preamble of this character is added declaratory of the purposes and intentions of the parties, it will be looked to in construing the contract, and to supply any omissions therefrom which are capable of being supplied by reference to such recitals, but in no sense will it be the basis of a legal and binding obligation of the parties. See *Trower* v. *Elder*, 77 Ill. 452, where it was held that a recital in a contract very much like the recital in the contract here was no part of the contract, but the court would look to it in determining the subject matter about which the parties were contracting, inasmuch as it was of doubtful interpretation without this aid. So in *Ming* v. *Woolfolk*, 3 Mont. 380, it was held that the recitals contained in the contract could be looked to only for the purpose of ascertaining the situation of the parties, but their legal obligation must be determined by the last paragraph, which paragraph contained their undertakings. See also *Miller* v. *Wagenhauser*, 18 Mo. App. 11; *Price & Nisbet* v. *Bigham's Ex'rs.*, 7 Harr. & John. 296; 2 Parsons on Contracts. pages 620 and 833; Leake on Contracts, page 147. So we conclude that the legal obligation of the parties to this contract must be fixed by the last three paragraphs thereof, and that the only purpose of the first two paragraphs, or the preamble, is to identify the subject matter about which the parties were contracting, or to explain any ambiguities in their undertaking. It is well settled that where a written contract is signed by proposed stockholders in a corporation to be thereafter formed, the same constitutes a continuing offer to take the stock of said company when it is formed, and if said company is subsequently formed and accepts said subscription, then it becomes as binding upon the party making it as though it had been made to the

company after it had been duly organized. *Windsor Hotel Co.* v. *Schenk,* 76 W. Va. 1.

It must also be borne in mind, however, that when such corporation after organization accepts the subscription and there are conditions attached to it, as in this case, it accepts it subject to the conditions thereto annexed, and it will be under the same obligation to perform the conditions upon its part as the subscriber is to pay the amount of his subscription. 10 Cyc. 416; 7 R. C. L. 228. A reference to, the contract shows that the only conditions upon which these subscriptions to the stock of this proposed corporation were made are: first, that there should be fifty thousand dollars of such stock subscribed before such subscriptions became binding; second, that the proceeds of the sale of the $75,000.00 of preferred stock was to be used as capital of the company, no part thereof to be expended on any of the stockholders of the present Norwalk Motor Car Company; third, that such expenditures be made on behalf of said company by the new board of directors; fourth, that of such new board of directors three thereof should be named by the preferred stockholders. The declaration in both of the special counts avers a full compliance with these conditions. It avers that fifty thousand dollars of preferred stock had been subscribed before the corporation was organized, as provided in said contract. It avers further that all of the proceeds arising from the sale of the $75,000.00 issue of preferred stock has been expended as capital on business of the new or reorganized company, and under the direction of the new board of directors, three of whom were selected from the preferred stockholders. This is all that was necessary to make the defendants liable upon their subscriptions.

The only difference in the declarations in these cases is that as to some of the defendants it is averred that they paid part of their subscriptions after the organization of the company; that others took part in the organization of the new corporation; that others took part in the organization and assisted in the election of the board of directors and the adoption of by-laws; and that some others acted as directors of said corporation from the time of its organization to the time it ceased

to do business. These allegations are no doubt made for the purpose of showing a waiver on the part of the defendants of the conditions upon which their subscriptions were made. As to whether such acts are effective for that purpose may depend largely upon the circumstances surrounding the defendants and the knowledge possessed by them at the time of their performance. Inasmuch as we find that both special counts of the declarations are good without these averments it will serve no useful purpose to speculate upon the effect of such acts upon the defendants under circumstances which may not have existed. If this question hereafter becomes material upon the trial of the cases, the facts may be fully developed and an intelligent judgment passed thereon. ·

The judgments of the circuit court overruling the demurrers to the declarations and to each count thereof are affirmed, and the causes remanded for further proper proceedings. *Judgments affirmed, and causes remanded.*