500, LLC, Appellant,

v.

CITY OF MINNEAPOLIS, Respondent.

No. A11–1705.

Supreme Court of Minnesota.

Sept. 25, 2013.

Karl E. Robinson, Hellmuth & Johnson, PLLC, Edina, MN, for appellant.

Susan L. Segal, Minneapolis City Attorney, Erik E. Nilsson, Darla J. Boggs, Assistant City Attorneys, Minneapolis, MN, for respondent.

## OPINION

STRAS, Justice.

The question presented in this case is whether an application to a heritage-preservation commission for a certificate of appropriateness is a "written request relating to zoning" under Minn.Stat. § 15.99, subd. 2(a) (2012). If so, then the respondent, City of Minneapolis ("the City"), had only 60 days to "approve or deny" the application for a certificate of appropriateness submitted by the appellant, 500, LLC ("500 LLC"). *See* Minn.Stat. § 15.99, subd. 2(a). Because we conclude that an application for a certificate of appropriateness is a "written request relating to zoning" and that the City failed to approve or deny 500 LLC's application within 60 days, we reverse.

### I.

500 LLC is a real-estate firm that owns a vacant four-story building ("the property") located at 500 Third Street North in the warehouse district of Minneapolis. 500 LLC seeks to develop the property into an office building. 500 LLC submitted a site plan application to the City in September 2008 to obtain approval of its proposed development. According to the Minneapolis City Code, the purpose of a site plan application is to allow the City to determine whether a proposed development is "compatible with nearby properties, neighborhood character, natural features and plans adopted by the city council." Minneapolis, Minn., Code of Ordinances § 530.10 (2013). The Minne-

apolis City Council approved 500 LLC's site plan application.

Before the City Council reviewed 500 LLC's site plan application, however, the Minneapolis Heritage Preservation Commission ("the Commission") nominated the property for designation as a local historic landmark. The Commission's action placed the property under "interim protection," which prohibits "destruction or inappropriate alteration [of a nominated property] during the designation process" in the absence of a "certificate of appropriateness." Minneapolis, Minn., Code of Ordinances §§ 599.240, 599.320 (2013).

On May 6, 2009, 500 LLC submitted an application for a certificate of appropriateness to the Commission. Following a public hearing and a series of administrative appeals, the City Council denied the application for a certificate of appropriateness on July 31, 2009. Approximately 10 months later, the City Council approved a resolution designating the property as a local historic landmark. The designation became final and effective on June 5, 2010.[1]

In October 2010, 500 LLC commenced this action against the City. In its complaint, 500 LLC alleged, among other things, that the City violated Minn.Stat.

§ 15.99, subd. 2(a), because it failed to approve or deny the application for a certificate of appropriateness within 60 days. *See* Minn.Stat. § 15.99, subd. 2(a) (requiring an agency to "approve or deny within 60 days a written request relating to zoning"). 500 LLC further alleged that the City's failure to approve or deny the application resulted in its automatic approval at the end of the 60–day period. *See id.* (declaring that an agency's failure to approve or deny "a written request relating to zoning" within 60 days results in the automatic approval of the request). 500 LLC sought a declaratory judgment that its "application for [a] Certificate of Appropriateness [was] approved and granted by operation of law."

 At the close of discovery, the district court granted summary judgment to the City.[2] The court recognized that "[c]onventionally, one would believe that historic preservation proceedings and decisions would 'relate to' zoning inasmuch as they may serve to control projects in a manner akin to zoning requirements, or may employ special zoning conditions within historic districts." Even so, the court concluded that Minn.Stat. § 15.99, subd. 2(a), did not apply to an application for a certificate of appropriateness because "decisions regarding historic preservation are not

1. Even though the property is no longer under interim protection, the case is not moot because a certificate of appropriateness is also necessary for any proposed alteration to a designated landmark. *See* Minneapolis, Minn., Code of Ordinances § 599.320 ("Any alteration of a landmark, property in an historic district or nominated property under interim protection shall be prohibited except where authorized by a certificate of appropriateness approved by the commission.").

2. The district court concluded that it had subject-matter jurisdiction over 500 LLC's section 15.99 claim. We agree. A quasi-judicial decision of a city is reviewable only by writ of certiorari to the court of appeals. *See Handi-*

*craft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 24 (Minn.2000). However, a claim that a city has violated the 60–day rule in Minn.Stat. § 15.99, subd. 2(a), is not a challenge to a *decision*—quasi-judicial or otherwise. Rather, it is a challenge to a city's *failure* to render a decision, which necessarily provides no decision for the court of appeals to review by writ of certiorari. *See Dead Lake Ass'n, Inc. v. Otter Tail Cnty.*, 695 N.W.2d 129, 134 (Minn.2005) (stating that "certiorari is an extraordinary remedy intended *only* for review of quasi-judicial decisions" (emphasis added)). Accordingly, the district court had subject-matter jurisdiction over 500 LLC's section 15.99 claim.

brought into or linked in logical or natural association with actual zoning decisions."

The court of appeals affirmed. *500, LLC v. City of Minneapolis,* No. A11–1705, 2012 WL 2368883, at *6 (Minn.App. June 25, 2012). The court reasoned that a "written request relating to zoning" is " 'a request to conduct a specific use of land within the framework of the regulatory structure relating to zoning or, in other words, a zoning application.' " *Id.* (quoting *Advantage Capital Mgmt. v. City of Northfield,* 664 N.W.2d 421, 427 (Minn. App.2003)). Because an application for a certificate of appropriateness was a request to "make alterations to the property," not to conduct a specific use of the land, the court concluded that an "application for a certificate of appropriateness is not a request relating to zoning, and the district court did not err in determining that Minn.Stat. § 15.99 does not apply to the application." *Id.* We granted 500 LLC's petition for further review.

## II.

■ The question presented in this case is whether an application for a certificate of appropriateness is a "written request relating to zoning" under section 15.99, subdivision 2(a). Interpretation of a statute is a question of law that we review de novo. *Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010). The first step in statutory interpretation is to "determine whether the statute's language, on its face, is ambiguous." *Id.* (citation omitted) (internal quotation marks omitted). A statute is ambiguous only if it is susceptible to more than one reasonable interpretation. *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d

273, 277 (Minn.2000). If a statute is ambiguous, then we may resort to the canons of statutory construction to determine its meaning. *State v. Hayes,* 826 N.W.2d 799, 804 (Minn.2013). If a statute is unambiguous, however, then we must apply the statute's plain meaning. *Larson,* 790 N.W.2d at 703.

### A.

■ We begin our analysis with the text of Minn.Stat. § 15.99, subd. 2(a), which states in relevant part as follows:

> [A]n agency must approve or deny within 60 days a *written request relating to zoning,* septic systems, watershed district review, soil and water conservation district review, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request.

(Emphasis added.) The parties agree that an application for a certificate of appropriateness is a "written request." The City also concedes that, if an application for a certificate of appropriateness is a "written request relating to zoning," its failure to deny 500 LLC's request within 60 days resulted in the automatic approval of 500 LLC's application.[3] The parties disagree only about whether an application for a certificate of appropriateness "relat[es] to zoning" under Minn.Stat. § 15.99, subd. 2(a).

■ The statute does not define the phrase "relating to" or the term "zoning." In the absence of statutory definitions, we

---

3. The City's concession appears to be motivated by *Moreno v. City of Minneapolis,* 676 N.W.2d 1 (Minn.App.2004), in which the court of appeals held that the relevant "agency" under Minn.Stat. § 15.99, subd. 2(a), is the city council, not the planning commission, because "the planning commission's approval of a zoning application is not the final decision of the city." *Moreno,* 676 N.W.2d at 5. In light of the City's concession, we express no opinion about whether *Moreno* correctly analyzed Minn.Stat. § 15.99, subd. 2(a).

give words and phrases their plain and ordinary meanings. *See Abrahamson v. St. Louis Cnty. Sch. Dist.*, 819 N.W.2d 129, 133 (Minn.2012) (citing Minn.Stat. § 645.08(1) (2012)).

The phrase "relating to" means " 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed.1979)); *see also Webster's Third New International Dictionary* 1916 (3d ed.2002) (defining "related" as "connected by reason of an established or discoverable relation"). We have defined "zoning" as the regulation of "building development and uses of property." *In re Denial of Eller Media Co.'s Applications for Outdoor Adver. Device Permits*, 664 N.W.2d 1, 8 (Minn.2003); *see also Webster's Third New International Dictionary* 2660 (3d ed.2002) (defining "zoning" as "to partition (a city, borough, or township) by ordinance into zones or sections reserved for different purposes (as residence, business, or manufacturing or combinations of these) and governed by appropriate building regulations (as of the height and area of all structures)").

Interpreting the foregoing terms together, the phrase "a written request relating to zoning" is unambiguous and refers to a written request that has a connection, association, or logical relationship to the regulation of building development or the uses of property. If a written request has such a connection, association, or logical relationship, then the 60–day time limit in Minn.Stat. § 15.99, subd. 2(a), applies. *Calm Waters, LLC v. Kanabec Cnty. Bd. of Comm'rs*, 756 N.W.2d 716, 723–24 (Minn.2008) (Dietzen, J., concurring).

The City would define the scope of Minn.Stat. § 15.99, subd. 2(a), more narrowly by defining the phrase "a written request relating to zoning" to refer to only those requests that are explicitly authorized by an applicable zoning ordinance or statute. We disagree for two reasons.

The first reason is that the City's interpretation of Minn.Stat. § 15.99, subd. 2(a), fails to give the phrase "relating to" its plain and ordinary meaning. That phrase, which the Supreme Court of the United States has described as "broad," *Morales,* 504 U.S. at 383, 112 S.Ct. 2031, encompasses any connection, association, or logical relationship to the noun modified by the phrase—here, zoning. By effectively ignoring the phrase "relating to" in Minn. Stat. § 15.99, subd. 2(a), the City's interpretation conflicts with the canon that requires us to give meaning to every word and phrase in a statute. *See Baker v. Ploetz,* 616 N.W.2d 263, 269 (Minn.2000) (describing the canon).

The second reason is that the City's interpretation requires us to add words of limitation to an unambiguous statute. In the City's view, the scope of Minn.Stat. § 15.99, subd. 2(a), is limited to only those "written request[s]" that are explicitly authorized by a zoning statute or ordinance. The statute, however, says nothing about zoning statutes or ordinances. Rather, the connection required by the statute is to zoning itself: the regulation of building development and the uses of property. By focusing on zoning statutes and ordinances, the City's interpretation conflicts with the canon that prevents us from adding words or phrases to an unambiguous statute. *See Frederick Farms, Inc. v. Cnty. of Olmsted,* 801 N.W.2d 167, 172 (Minn.2011) (describing the canon). We therefore reject the City's interpretation of Minn.Stat. § 15.99, subd. 2(a), because it is unreasonable.

## B.

We now turn to whether 500 LLC's application for a certificate of appropriateness is a "written request relating to zoning." To qualify as a "written request relating to zoning," 500 LLC's application must have a connection, association, or logical relationship to the regulation of building development and the uses of property. For three reasons, we conclude that an application for a certificate of appropriateness is a "written request relating to zoning."

First, heritage-preservation proceedings have a connection, association, or logical relationship to zoning. As we have recognized, heritage-preservation proceedings are "akin to ... hearing[s] on a conditional use permit directed at a specific property and related to specific property rights." *Handicraft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 21 (Minn.2000); *see also Billy Graham Evangelistic Ass'n v. City of Minneapolis*, 667 N.W.2d 117, 125–26 (Minn.2003) (affirming a city's decision to designate a property as historic, even though some findings originated with the city's zoning and planning committee, rather than the city's heritage-preservation commission). Like a conditional-use permit, a certificate of appropriateness involves a particular property and affects specific property rights. In this case, for example, 500 LLC cannot alter the property to convert it into an office building without first securing the approval of the Commission or the Minneapolis City Council. *See* Minneapolis, Minn., Code of Ordinances § 599.310 (2013). Such a restriction, like the requirement for a conditional-use permit, affects 500 LLC's specific rights to alter and use its property—which is typical of a zoning restriction. *See Denial of Eller Media Co.'s Applications*, 664 N.W.2d at 8.

Second, the state's historic-preservation-enabling laws recognize a connection, association, or logical relationship between heritage preservation and zoning. The City established its heritage-preservation regulations "pursuant to the authority granted to ... municipalit[ies]" under the Minnesota Historic District Act and the Municipal Heritage Preservation Act. Minneapolis, Minn., Code of Ordinances § 599.20 (2013). The Minnesota Historic District Act empowers municipalities with state-designated historic districts to create boards or commissions with "the power to provide special zoning conditions for ... historic districts" and to "amend zoning ordinances to encompass ... historic districts in zoning legislation." Minn.Stat. § 138.74 (2012). Similarly, the Municipal Heritage Preservation Act provides municipalities with the power to create heritage-preservation commissions that can approve "use variations to a zoning ordinance." Minn. Stat. § 471.193, subd. 3(6) (2012). Thus, because a municipality's powers in historic-preservation matters extend to zoning, the state's historic-preservation-enabling laws point toward a connection, association, or logical relationship between historic preservation and zoning.

Third, the City's heritage-preservation ordinances identify a connection, association, or logical relationship between an application for a certificate of appropriateness and zoning. The purpose of a certificate of appropriateness is "to protect landmarks, historic districts and nominated properties under interim protection by providing the [C]ommission with authority to review and approve or deny all proposed alterations" to such properties to maintain their significance and integrity. Minneapolis, Minn., Code of Ordinances § 599.310. Before issuing a certificate of appropriateness, the Commission must find that any proposed alteration is "consistent with the applicable policies of the

comprehensive plan." Minneapolis, Minn., Code of Ordinances § 599.350(a)(6) (2013); *see also* Minneapolis, Minn., Code of Ordinances § 599.350(c)(2) (2013) (requiring the Commission to find, when applicable, that an applicant has adequately considered "Title 20 of the Minneapolis Code of Ordinances, Zoning Code, Chapter 530, Site Plan Review"). Zoning ordinances implement the policies and goals of the comprehensive plan, *see* Minn.Stat. § 462.357, subd. 1 (2012), which is the "the primary land use control for cities and supersedes all other municipal [ordinances] when [the ordinances] are in conflict with the plan," *Mendota Golf, LLP v. City of Mendota Heights,* 708 N.W.2d 162, 175 (Minn.2006). Indeed, in this case, the president of the planning commission publicly opposed 500 LLC's application for a certificate of appropriateness because, in his view, the proposed development was inconsistent with the City's comprehensive plan. For these reasons, the City's ordinances provide further support for our conclusion that an application for a certificate of appropriateness is a "written request relating to zoning" under Minn.Stat. § 15.99, subd. 2(a).

### III.

For the foregoing reasons, we conclude that an application for a certificate of appropriateness is "a written request relating to zoning" under Minn.Stat. § 15.99, subd. 2(a). Because the City concedes that it failed to approve or deny 500 LLC's application for a certificate of appropriateness within 60 days, we reverse the district court's grant of summary judgment to the City on 500 LLC's section 15.99 claim and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LILLEHAUG, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

PAGE, Justice (concurring).

While I do not disagree with the court that an application for a certificate of appropriateness is a "written request relating to zoning" under Minn.Stat. § 15.99, subd. 2(a) (2012), I write separately to note a concern. As relevant to this case, Minn. Stat. § 15.99, subd. 1(b) (2012), defines "agency" as "a statutory or home rule charter city." Thus, the agency here is the City of Minneapolis. What is unclear to me, on the record presented, is whether the application submitted by 500, LLC (500 LLC) to the Heritage Preservation Commission constitutes "[a] request ... submitted in writing to the agency" as required by Minn.Stat. § 15.99, subd. 1(c) (2012). The Commission denied that application on June 2, 2009. The application was not submitted to the City Council until June 12, 2009, when 500 LLC filed its notice of appeal. In late July, the City Council's Zoning and Planning Committee considered 500 LLC's appeal and recommended that the City Council deny the appeal. On July 31, 2009, the City Council adopted the Committee's recommendation to deny 500 LLC's appeal. Accordingly, the City Council rejected that appeal within 60 days of its submission to the City Council. However, the City has conceded that, if the application for a certificate of appropriateness constitutes a written request relating to zoning, its denial of the application was outside the 60–day limit. Therefore, I concur in the result.