CHUTICH, J., took no part in the consideration or decision of this case.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
OPINION
ANDERSON, Justice.
Appellant Phone Recovery Services, LLC initiated a qui tam action under the Minnesota False Claims Act, Minn. Stat. § 15C.02 (2016) (MFCA), alleging that respondents have intentionally failed to pay fees and surcharges due to the State and imposed by statute for 911 services, the Telecommunications Access Minnesota (TAM) program, and the Telephone Assistance Plan (TAP) program. Because the MFCA does not allow qui tam actions based on "claims, records, or statements made under portions of Minnesota Statutes relating to taxation," Minn. Stat. § 15C.03 (2016), respondents jointly moved for dismissal, asserting that the 911, TAM, and TAP charges are all taxes and therefore appellant failed to state a *318 claim as a matter of law. The district court granted respondents' motion and the court of appeals affirmed. Phone Recovery Servs., LLC ex rel. State v. Qwest Corp. , 901 N.W.2d 185, 199 (Minn. App. 2017). We affirm.
FACTS
The fees and surcharges that are the subject of this litigation under the MFCA are all creatures of statute. Minnesota Statutes § 403.11 (2016) establishes a "fee" for the State's 911 emergency system. This fee is set, within statutory limits, by the Commissioner of Public Safety. Minn. Stat. § 403.11, subd. 1(c). The TAM charge and the TAP surcharge, also subject to statutory limits, are established by the Public Utilities Commission.[1] Minn. Stat. §§ 237.52, subd. 2(a), .70, subd. 6 (2016). Telecommunications carriers, the respondents in this litigation, are required to collect all three of these surcharges from their customers and turn the proceeds over to the Commissioner of Public Safety.[2] Minn. Stat. § 237.49 (2016). Telecommunications carriers also are required to report to the State the number of "access" lines subject to these surcharges. See Minn. Stat. § 403.11, subd. 6 ; Minn. R. 7817.0900, subp. 3 (2017).
Phone Recovery Services, a New Jersey corporation, brought an action in May 2014, alleging that respondents had violated the reverse-false-claims provisions of the MFCA. The reverse-false-claims provisions impose liability for (1) "[having] possession, custody, or control of property or money used, or to be used, by the state or a political subdivision and knowingly deliver[ing] or caus[ing] to be delivered less than all of that money or property," (2) "knowingly mak[ing] or us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a political subdivision," or (3) "knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the state or a political subdivision."[3] Minn. Stat. § 15C.02(a)(4), (7). Specifically, Phone Recovery Services alleged that respondents had knowingly, intentionally, deliberately, or recklessly under-collected the 911, TAM, and TAP surcharges from their customers, and thus underpaid the amounts owed to the State.
Phone Recovery Services filed a complaint, under seal, in Ramsey County District Court. After the Attorney General declined to intervene, the district court unsealed the complaint and ordered Phone *319 Recovery Services to pursue the litigation on behalf of the State.[4] Respondents moved to dismiss. As relevant here, respondents argued that, because the surcharges are taxes, the MFCA tax bar applied, see Minn. Stat. § 15C.03 (excluding a claim "made under portions of Minnesota Statutes relating to taxation"), and Phone Recovery Services' complaint must be dismissed for failure to state a claim, see Minn. R. Civ. P. 12.02(e) (providing for dismissal for failure to state a claim upon which relief can be granted). The district court agreed, applying the statutory definition of "tax" provided by Minn. Stat. § 645.44, subd. 19 (2016) to the surcharges. Accordingly, the district court concluded that Minn. Stat. §§ 237.52, .70, and 403.11 are "[s]tatutes relating to taxation" for purposes of the tax-bar provision in Minn. Stat. § 15C.03 and dismissed the complaint with prejudice.
The court of appeals agreed that the 911, TAM, and TAP surcharges are taxes by statutory definition and ultimately concluded that the claim brought by Phone Recovery Services was prohibited by the tax bar provided in the MFCA. Phone Recovery Servs. , 901 N.W.2d at 198-99. We granted review.
ANALYSIS
We are presented with a question of statutory interpretation; specifically, does the tax bar set out in Minn. Stat. § 15C.03 as part of the MFCA apply to surcharges collected by telecommunications carriers and remitted to the State? We review the interpretation of statutes de novo. Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016).
I.
We begin our analysis with the MFCA. This Act permits, under certain circumstances, a plaintiff to bring a private cause of action to collect funds due to the State. See Minn. Stat. § 15C.05 (2016). If these claims are successfully prosecuted, the plaintiff is allowed to retain some of the proceeds of the litigation and the balance of the recovery is remitted to the State. See Minn. Stat. § 15C.13 (2016). A false claims action can be a direct claim in which the allegation is that a defendant wrongfully secured monies from the State. Alternatively, as here, in a "reverse" MFCA complaint, the plaintiff alleges that the defendant did not turn over all monies due to the State. See Minn. Stat. § 15C.02(a)(4), (7).
But not all private causes of action under the MCFA are permitted. The MFCA "tax bar" precludes actions if the defendant's allegedly false claim stems from "portions of Minnesota Statutes relating to taxation." Minn. Stat. § 15C.03. The MFCA does not define the phrase "relating to taxation." See Minn. Stat. §§ 15C.01, 15C.03. When a statute does not define a term or phrase, we first consider the plain meaning of that language. See 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290-91 (Minn. 2013) ("In the absence of statutory definitions , we give words and phrases their plain and ordinary meanings." (emphasis added) ).
*320 We have previously defined "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." Id . at 291 (quoting Morales v. Trans World Airlines, Inc. , 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ). With respect to the term "taxation," the court of appeals looked to several dictionary definitions, including "the levying of tax," "the action of taxing," "the imposition of taxes," "the fact of being taxed," and "[a]n assessed amount of tax." Phone Recovery Servs. , 901 N.W.2d at 197 (internal citations omitted) (alteration in original). Based on dictionary definitions of "relating to" and "taxation," the court of appeals concluded that "[a] statute is one 'relating to taxation' ... if the statute has a connection, relation, or reference to or concerns the imposition of a tax, the amount assessed as tax, or the revenue gained from taxes." Id . We agree with the court of appeals that the plain meaning of "portions of Minnesota Statutes relating to taxation" refers to the provisions of Minnesota Statutes that pertain, refer, or stand in some relation to the levying, imposition, assessment, or collection of taxes. See Shire v. Rosemount , 875 N.W.2d 289, 292 (Minn. 2016) ("When a word or phrase has a plain meaning, we presume that the plain meaning is consistent with legislative intent and engage in no further statutory construction.").
Phone Recovery Services contends that the court of appeals erred in its interpretation of the statute in at least three ways. First, Phone Recovery Services argues that the court of appeals' interpretation fails to give effect to the Legislature's distinction between statutory fees, which includes "obligation[s] to pay ... money" to the State and for which a claim can be asserted under the MFCA, and taxes, for which such a claim cannot be asserted. We disagree. Nothing in the plain language of section 15C.03 refers to an "obligation" to "pay money." We must focus on the plain language that excludes claims based on "portions" of statutes "relating to taxation."
Second, Phone Recovery Services argues that the broad structure of the MFCA and its remedial purpose favor a limiting construction of Minn. Stat. § 15C.03 to avoid sweeping "the overwhelming majority of payments made to the State" into the exception. The remedial purpose of section 15C.02 does not change the plain language of section 15C.03, and the plain language of section 15C.03 captures the Legislature's intent, which ends the process of interpretation. See City of Brainerd v. Brainerd Invs. P'ship , 827 N.W.2d 752, 755 (Minn. 2013). As the court of appeals stated, the plain language of Minn. Stat. § 15C.03 does not alter the claims that can be asserted under Minn. Stat. § 15C.02 ; alleged violations that "involve claims, records, or statements that are not made under portions of Minnesota Statutes relating to taxation" can still be pursued. See Phone Recovery Servs ., 901 N.W.2d at 199.
Third, Phone Recovery Services asserts that the Legislature intended to include within Minn. Stat. § 15C.03 only statutes enacted under the State's taxing power, specifically Minn. Stat. ch. 270-299 (2016).[5] But the plain language of *321 Minn. Stat. § 15C.03 does not invoke the State's taxing power, and it is not confined to chapters 270 through 299 of Minnesota Statutes-it broadly encompasses any statutes, unconstrained by specific chapter designations, "relating to taxation." An interpretation that excludes some statutes that plainly impose taxes but are not within Minn. Stat. ch. 270-299, see, e.g. , Minn. Stat. §§ 144F.01, subd. 4 (authorizing an "ad valorem tax levy" to support the cost of certain emergency medical services), 240.15, subd. 1(a) (imposing "a tax at the rate of six percent" on pari-mutuel pools) (2016), effectively requires that we add restrictive terms to the plain language and that we cannot do, see Walsh v. U.S. Bank, N.A. , 851 N.W.2d 598, 604 (Minn. 2014) (explaining that "we do not add words or phrases to unambiguous statutes" (citation omitted) ).
The dissent takes a different approach, asserting that the plain meaning of "relating to taxation" is facially ambiguous.[6] There are multiple problems with the dissent's view of ambiguity. First, the dictionary definitions that interpret "relating to" to mean "about" are not inconsistent with our prior definition. Compare 500, LLC , 837 N.W.2d at 291 (defining "relating to" as "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" (citations omitted) (internal quotation marks omitted) ), with Webster's Third New International Dictionary 5 (3d ed. 2002) (defining "about" as "with regard to," "concerning," and "on the subject of"), id. at 470 (defining "concern" as "to relate or refer to: be about"), and id. at 1911 (defining "regard" as "to have relation to or bearing upon: relate to: touch on"). The dissent's definitions provide only consistent synonyms, not a second reasonable interpretation that supports a finding of ambiguity. 500, LLC , 837 N.W.2d at 290 (requiring "more than one reasonable interpretation" for a finding of ambiguity (citation omitted) ).
Second, Minn. Stat. § 15C.03 encompasses "portions of Minnesota Statutes relating to taxation." A "portion" is "a part of a whole," see Webster's Third New International Dictionary 1768 (3d ed. 2002), "a section or quantity in a larger thing," see The American Heritage Dictionary of the English Language 1373 (5th ed. 2011), or "an amount, section, or piece of something," see The New Oxford American Dictionary 1330 (2001). Under the plain meaning of the word "portion," a single statute, or even a single subdivision of a statute, can relate to taxation, even if the remainder of the statute or chapter of statutes does not. For example, Minn. Stat. § 403.11, as a "portion" of Minn. Stat. ch. 403 (2016), may be about taxation, even if the rest of chapter 403 is not. Thus, in the context of the MFCA, the phrase "portions" of statutes "relating to taxation" does not suggest a legislative intent to focus only on statutes that make up Minnesota's counterpart to the Internal *322 Revenue Code or that are only "about" taxation, as argued by the dissent.
Third, even assuming that we adopt the dissent's approach and interpret "relating to" to mean "about," it would not produce a different result here. Minnesota Statutes §§ 237.52, subd. 2, .70, subd. 6, and 403.11, subd. 1, each impose a surcharge. See Minn. Stat. § 237.49. If these surcharges are taxes, and we conclude today that they are, then these subdivisions, by definition, are statutory provisions that are "about" taxation. Because the dissent's proposed definition does not render Minn. Stat. § 15C.03 ambiguous in the context of this case, there is no need to turn to the canons of construction. See, e.g. , Sorchaga v. Ride Auto, LLC , 909 N.W.2d 550, 555 (Minn. 2018) ("The words of a statute are ambiguous only 'if, as applied to the facts of the particular case , they are susceptible to more than one reasonable interpretation.' " (emphasis added) (quoting Staab v. Diocese of St. Cloud , 813 N.W.2d 68, 73 (Minn. 2012) ) ); Chanhassen Estates Residents Ass'n v. City of Chanhassen , 342 N.W.2d 335, 339 (Minn. 1984) ("When the words of a statute or ordinance in their application to an existing situation are clear and free from ambiguity, judicial construction is inappropriate." (emphasis added) (footnote omitted) ).
The dissent also argues that the phrase "portions of Minnesota Statutes relating to taxation" has a special meaning to the Legislature. For a phrase to have a special meaning, however, " 'courts [must] have ascribed a well-established and long-accepted meaning to [it].' " Cox v. Mid-Minn. Mut. Ins. Co. , 909 N.W.2d 540, 543 (Minn. 2018) (alteration in original) (quoting State v. Nelson , 842 N.W.2d 433, 445 (Minn. 2014) (Dietzen, J. dissenting) ). We have used the precise phrase "statutes relating to taxation" only three times, and then only in passing. See State v. Nw. Airlines , 213 Minn. 395, 7 N.W.2d 691, 699 (1942) (referencing "[t]he provisions of the statutes relating to taxation of personal property"); State v. New England Furniture & Carpet Co. , 107 Minn. 52, 119 N.W. 427, 427-28 (1909) ("A tax remains a tax, whether entered in a judgment or upon the tax rolls, and all rights and liabilities of the taxpayer are fixed and prescribed by the statutes relating to taxation."); see also State v. Nw. States Portland Cement Co. , 258 Minn. 162, 103 N.W.2d 225, 227 (1960) (same). Three passing references, with no analysis or definition, out of over 150 years of case law, hardly qualifies as a "well-established and long-accepted meaning." See Cox , 909 N.W.2d at 543.
Rather, the dissent asks us to draw a special meaning from the preambles to other statutes created by legislative acts relating to taxation. We have previously recognized that the preamble to a statute is not part of the statute. Twin City Candy & Tobacco Co. v. A. Weisman Co. , 276 Minn. 225, 149 N.W.2d 698, 702 (1967). The preamble to a statute may "offer[ ] valuable aid in construing a statute [that is] ambiguous on its face." Berg v. Berg , 201 Minn. 179, 275 N.W. 836, 842 (1937) (quoting Martin v. Rothwell , 81 W.Va. 681, 95 S.E. 189, 190 (1918) ). But Berg , which considered whether the preamble to a contract was part of the contractual terms, implies that a statute must be facially ambiguous before the preamble of the legislation is used for guidance. See id . (also stating that even then, "in no sense will it be the basis of a legal and binding obligation of the parties" (internal quotation marks omitted) (quoting Martin , 95 S.E. at 190 ) ). Instead of using the preamble of the legislation enacting Minn. Stat. § 15C.03 to resolve an ambiguity in that statute, however, the dissent relies on the preambles of legislation enacting other statutes to interpret section 15C.03 (which *323 we have concluded is not facially ambiguous in the first instance). Berg does not support the dissent's attempt to find ambiguity where none exists. And whatever Berg might stand for, it certainly does not sanction turning to statutory preambles in distant chapters to resolve a perceived ambiguity in another statute, which was separately enacted and codified in an entirely different chapter at an entirely different time.
We have held that facial ambiguity arises only if the plain language of the statute is "susceptible to more than one reasonable interpretation." 500, LLC , 837 N.W.2d at 290 (citation omitted). Neither Phone Recovery Services nor the dissent have advanced a plausible, reasonable alternative interpretation of the plain language of Minn. Stat. § 15C.03. We therefore conclude that the statute is unambiguous and decline the invitation of the dissent to explore the public policy behind the MFCA. See Christianson v. Henke , 831 N.W.2d 532, 537 (Minn. 2013) (holding that if we conclude a statute is unambiguous, our role is not to explore its spirit or purpose (citing Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 836 (Minn. 2012) ) ). We further conclude, as stated earlier, that the phrase "portions of Minnesota Statutes relating to taxation" refers to the portions of Minnesota Statutes that pertain, refer, or stand in some relation to the levying, imposition, assessment, or collection of taxes.
II.
We next address whether Minn. Stat. §§ 237.52, .70, and 403.11 are related to taxation and therefore are not subject to claims under the MFCA. The Legislature has given us a definition that resolves this question.
Minnesota Statutes § 645.44 (2016), provides various definitions for common terms "used in Minnesota Statutes or any legislative act." These definitions "shall" apply across all other Minnesota Statutes, "unless another intention clearly appears." Minn. Stat. § 645.44, subd. 1. "Tax" and "fee" are defined in section 645.44 as follows:
(a) "Tax" means any fee, charge, exaction, or assessment imposed by a governmental entity on an individual, person, entity, transaction, good, service, or other thing. It excludes a price that an individual or entity chooses voluntarily to pay in return for receipt of goods or services provided by the governmental entity. A government good or service does not include access to or the authority to engage in private market transactions with a nongovernmental party, such as licenses to engage in a trade, profession, or business or to improve private property.
(b) For purposes of applying the laws of this state, a "fee," "charge," or other similar term that satisfies the functional requirements of paragraph (a) must be treated as a tax for all purposes, regardless of whether the statute or law names or describes it as a tax. The provisions of this subdivision do not exempt a person, corporation, organization, or entity from payment of a validly imposed fee, charge, exaction, or assessment, nor preempt or supersede limitations under law that apply to fees, charges, or assessments.
Minn. Stat. § 645.44, subd. 19. Thus, the Legislature has broadly defined "tax" to include fees or charges imposed by government, regardless of whether the Legislature "name[d] or describe[d]" the charge as a tax (with the exception stated in subdivision 19(a) for prices that persons voluntarily pay "in return for receipt of goods or *324 services"). The district court and the court of appeals concluded that, under these definitions, the 911, TAM, and TAP surcharges are taxes. We agree.
The amount of the statutorily created 911 "fee" is set by the Commissioner of Public Safety. Minn. Stat. § 403.11, subd. 1(c). It is assessed on "each customer access line" or the equivalent, is collected by telecommunications service providers such as respondents, and is transmitted to the State to be deposited in the State's special revenue fund. Id. , subd. 1(c)-(d). Similarly, the amounts of the TAM "charge" and TAP "surcharge" are established by the Public Utilities Commission and are assessed on each customer access line. Minn. Stat. §§ 237.52, subd. 2(a), .70, subd. 6. Both of these surcharges are collected by the telecommunications service providers each month and paid to the Commissioner of Public Safety. Minn. Stat. § 237.49. Under the plain language of Minn. Stat. § 645.44, subd. 19, these statutory surcharges-regardless of the actual label used-are taxes.
Further, nothing in these statutorily imposed surcharges allows consumers, service providers, or the State to tie the amount of the fee to a consumer's level (or lack) of use of the statewide 911 system, TAM services, or TAP services. Each customer pays the same amount per access line, even if the customer never uses any of these three services during the life of the phone service contract. Cf. Minn. Stat. § 257.49 (2016) (describing surcharge as "per telephone access line"). Thus, there is no direct connection between paying the 911 fee, the TAM charge, or the TAP surcharge and receiving goods or services from any governmental entity. These surcharges, therefore, do not meet the exclusion provided in Minn. Stat. § 645.44, subd. 19(a), and are taxes.[7] A statute that creates a tax necessarily pertains or refers to the assessment of taxes, and we therefore conclude that Minn. Stat. §§ 237.52, .70, and 403.11 are "statutes relating to taxation" for purposes of Minn. Stat. § 15C.03.[8]
Phone Recovery Services argues that using the definition of a "tax" in Minn. Stat. § 645.44, subd. 19, effectively converts all fees to taxes, regardless of the *325 contrary intent of the Legislature. We disagree for two reasons.
First, we are required to apply the definitions provided by the Legislature in Minn. Stat. § 645.44"unless another intention clearly appears." Minn. Stat. § 645.44, subd. 1. We already have concluded that the plain and unambiguous language of Minn. Stat. § 15C.03 cannot be construed to encompass only a restricted subset of tax statutes because nothing in the plain language suggests that intent. The Legislature used no words, such as "limited to" certain tax statutes or tax types, and did not refer to the authority of some, but not other, agencies to administer taxes.
Second, subdivision 19 does not define all fees and charges to be taxes. The definition is narrower, focusing on those legislative enactments that are imposed by a governmental entity, other than a price voluntarily paid in return for goods and services provided by the governmental entity. As explained above, the surcharges at issue here do not fall within this exception, and thus they are taxes.
The dissent also contends that the MFCA is a remedial statute and that the tax bar in section 15C.03 should therefore be construed narrowly, rather than turning to the definitions in section 645.44. Our canon of liberally construing remedial statutes does not apply in cases in which, as here, the statute is facially unambiguous. Larson v. State , 790 N.W.2d 700, 704 (Minn. 2010). If the Legislature did not intend for the tax bar to be as broad as the plain meaning of Minn. Stat. § 15C.03 provides, that is a matter for the Legislature , not for us, to correct. See Haghighi v. Russian-Am. Broad. Co. , 577 N.W.2d 927, 930 (Minn. 1998) ; see also Feick v. State Farm Mut. Auto. Ins. Co. , 307 N.W.2d 772, 775 (Minn. 1981) ("It is not for us to rewrite a statute that has no ambiguities...." (citation omitted) (internal quotation marks omitted) ). As the statutes at issue are currently written, the 911 fee, TAM charge, and TAP surcharge are taxes, and the MFCA tax bar precludes qui tam claims based on records or statements made under Minn. Stat. §§ 237.52, .70, and 403.11.[9]
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
DISSENT

The TAM program provides telecommunications devices to eligible persons with communication disabilities and requires the Commissioner of Commerce to contract for telecommunications relay services to serve persons with communication disabilities. Minn. Stat. § 237.51, subd. 1 (2016). The TAP program provides financial assistance to low-income telephone customers. See Minn. Stat. § 237.70 (2016).

In this opinion, we refer to the costs for the 911, TAM, and TAP programs using the terms provided in the statutes. See Minn. Stat. §§ 237.52 (establishing the TAM "charge"), .70 (establishing the TAP "surcharge"), 403.11 (establishing the 911 "fee") (2016). Likewise, we refer to all three statutory programs collectively as "surcharges" in accordance with Minn. Stat. § 237.49. We are not, however, bound by the Legislature's decision to designate an obligation as a "fee" or "surcharge" when determining, as a matter of law, whether a statutory obligation is a tax. See Minn. Stat. § 645.44, subd. 19(b) (2016).

The MFCA defines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." Minn. Stat. § 15C.01, subd. 3b (2016).

The MFCA requires a private party initiating a qui tam action on behalf of the State to first provide the complaint to the Attorney General. See Minn. Stat. § 15C.05(e) (2016) ; see also Minn. Stat. § 15C.01, subd. 7(1) (2016) (defining "prosecuting attorney," for purposes of the Act, as the Attorney General where the claim "involves money, property, or services provided by the state."). If the Attorney General declines to intervene, the private party who initiated the action "has the same rights in conducting the action" as the Attorney General would have. Minn. Stat. § 15C.08(a) (2016).

In support of this argument, Phone Recovery Services cites to Minn. Stat. § 270.07(e) (2004), which described the authority of the Commissioner of Revenue to abate a penalty or interest assessment "imposed by any law relating to taxation." But this statute was repealed in 2005, see Act of June 2, 2005, ch. 151, art. 1, § 117, 2005 Minn. Laws 1352, 1437, four years before the Legislature enacted the MFCA in 2009, see Act of May 16, 2009, ch. 101, art. 2, §§ 24-39, 2009 Minn. Laws 1654, 1676-83. Further, the current version of the statute that describes the Commissioner's abatement authority does not use the phrase "relating to taxation." See Minn. Stat. § 270C.34, subd. 1 (2016) (authorizing the Commissioner to abate, reduce, or refund a penalty or interest assessment "imposed by a law administered by the commissioner" or by several specific statutes).

We note that neither Phone Recovery Services nor respondents have asserted that Minn. Stat. § 15C.03 is ambiguous, and having determined that the Legislature's intent is apparent from the plain and unambiguous language, our process of construction is at an end. Kremer v. Kremer , 912 N.W.2d 617, 623 (Minn. 2018) ("When the intent of the Legislature is clear from the plain language of the statute, further statutory construction is not necessary." (citations omitted) ). For completeness, however, we respond to the dissent's arguments based on ambiguity.

Because we conclude that the surcharges are taxes for purposes of the exclusion provided by Minn. Stat. § 15C.03, we need not address the parties' arguments regarding common law factors for identifying a tax as opposed to a fee. Moreover, our holding today is consistent with our precedent that generally defines a "tax." See In re Petition of S.R.A., Inc. , 213 Minn. 487, 7 N.W.2d 484, 487 (1942) (defining taxes as "pecuniary charges imposed by the legislative power ... to raise money for public purposes" (citation omitted) ); see also First Baptist Church of St. Paul v. City of St. Paul , 884 N.W.2d 355, 361-62 (Minn. 2016) (concluding that city's right-of-way assessment was a tax because it was a broadly assessed revenue measure that benefited the general public, not just those paying the assessment); Country Joe, Inc. v. City of Eagan , 560 N.W.2d 681, 686 (Minn. 1997) (holding that a city's road unit connection charge was a tax because the "city's true motivation was to raise revenue" and benefit the public in general). Cf. Schowalter v. State , 822 N.W.2d 292, 305 (Minn. 2012) (Page, J., dissenting) (noting that "tax revenues include taxes of 'state wide application on any class of property, income, transaction or privilege' " (quoting Minn. Const. art. XI, § 4 ) ).

The dissent argues that we should look to Minn. Stat. § 271.01 (2016), which governs the tax court's jurisdiction and defines "the tax laws of the state" for purposes of that jurisdiction. See Minn. Stat. § 271.01, subd. 5. Because we have concluded that Minn. Stat. § 15C.03 is unambiguous, it is not proper for us to look to other statutes, such as section 271.01, to interpret the tax bar. We are bound by the plain language of the statute. See Cocchiarella , 884 N.W.2d at 624.

Because we affirm the court of appeals on the grounds that Minn. Stat. § 15C.03 is unambiguous and the 911, TAM, and TAP surcharges are taxes within the statutory definition of Minn. Stat. § 645.44, subd. 19, we do not address respondents' arguments regarding the MFCA's public-disclosure bar or pleading fraud with particularity as required by Minn. R. Civ. P. 9.02.